■ Scott VV., Respondent, v Joy VV., Appellant. [959 NYS2d 298]—

Peters, P.J. Appeal from an order of the Supreme Court (Hall, J.), entered February 22, 2012 in Saratoga County, which, among other things, denied defendant's motion to modify a prior order of custody and visitation.

Plaintiff (hereinafter the father) and defendant (hereinafter the mother) are the parents of a daughter (born in 2006). Following the parties' separation in June 2010, the mother learned that approximately 20 years earlier the father had sexually abused his daughter from a previous marriage, and immediately obtained an order preventing any contact between the father

and the child. In February 2011, an order was entered on consent granting the parties joint legal custody of the child, with the mother having primary physical custody and the father having twice-weekly supervised visitation. The order also required the father to undergo a sex abuse risk assessment and successfully complete sex abuse treatment.

In April 2011, the mother sought permission to relocate to California with the child. Following three days of hearings in June 2011, Supreme Court temporarily permitted the relocation. Subsequent hearings were held in August and September 2011 after which Supreme Court found, in a detailed and well-reasoned written decision, that relocation would not be in the child's best interests. The mother appeals.

The mother, as the parent seeking to relocate, had the burden of proving by a preponderance of the evidence that the proposed move would be in the child's best interests (*see Matter of Shirley v Shirley*, 101 AD3d 1391, 1392 [2012]; *Matter of Pizzo v Pizzo*, 94 AD3d 1351, 1352 [2012]). "Relevant factors to consider include 'each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements' " (*Matter of Feathers v Feathers*, 95 AD3d 1622, 1623 [2012], quoting *Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *see Matter of Scheffey-Hohle v Durfee*, 90 AD3d 1423, 1425 [2011], *appeal dismissed* 19 NY3d 876 [2012]). As Supreme Court was in the best position to make factual findings and credibility determinations, its determination of the relocation issue will not be disturbed unless it lacks a sound and substantial basis in the record (*see Matter of Weber v Weber*, 100 AD3d 1244, 1245-1246 [2012]; *Matter of Pizzo v Pizzo*, 94 AD3d at 1352; *Matter of Hissam v Mancini*, 80 AD3d 802, 804 [2011], *lv dismissed and denied* 16 NY3d 870 [2011]).

The record reveals that the mother's new boyfriend, who she met while he was temporarily in New York, was the impetus behind the requested relocation (*see Matter of Williams v Williams*, 90 AD3d 1343, 1344 [2011]; *Matter of Leach v Santiago*, 20 AD3d 715, 716 [2005], *lv denied* 6 NY3d 702 [2005]). Moreover, the proposed move provides no meaningful economic enhancement. The mother, who worked as a patient care

coordinator for a prestigious plastic surgery practice in Albany County, accepted an offer for a similar job in Beverly Hills, California. While her new position increased her annual salary by approximately $12,000 and, unlike her prior employment, offered opportunity for promotion, the testimony presented following the temporary move established that living expenses, transportation costs and the child's private school tuition were much higher than anticipated, with the increase in costs nearly subsuming her modest salary increase. Significantly, the mother is dependent on her boyfriend for a large portion of her living expenses,* but she offered no suggestion as to how she would cover those costs should their relationship terminate. Although the mother testified that the climate would improve the child's eczema and sinus issues, no proof was submitted to substantiate her claim that the relocation would result in any actual health benefit. Nor does the record demonstrate that the educational opportunities offered by the private school that the child planned on attending in California are superior to those offered by the school she attended prior to the move.

Moreover, while the father interacted with the child through Internet (Skype) and telephone conversations following the temporary relocation and the mother was willing to offer him periods of visitation during the summer and holidays, there was considerable evidence—including a detailed psychological evaluation—reflecting that the long distance relocation would be highly detrimental to the parent-child relationship. Indeed, the negative impact on this relationship, which all parties agreed was a meaningful and important part of the child's life, was a primary reason that Supreme Court denied the application for relocation. Prior to the mother's move to California, the father received supervised visitation with the child twice a week. Testimony from the supervisors of the visits established that the father always acted appropriately and that the child was very affectionate towards her father and greatly enjoyed the visits. Jacqueline Bashkoff, a psychologist who evaluated the parties on two separate occasions, the first in connection with the initial custody order and the second in connection with this proceeding, likewise testified to the positive relationship between the father and child and concluded that the proposed move would "[a]bsolutely" compromise that relationship. The move would also deprive the child of access to her extended family in the area, including her maternal grandparents, with whom she enjoys a close relationship. Supreme Court also

---

* Likewise, the mother acknowledged that she could only afford the child's tuition with the assistance of her 95-year-old grandmother.

credited evidence that the mother engaged in behavior—particularly since the move to California—that had a harmful effect on the child and tended to undermine the relationship with her father, including attempts to manipulate the child to say negative things about the father.

Substantial testimony was also presented regarding the steps taken by the father to address his past conduct. Bashkoff testified that the father followed every recommendation in her initial evaluation "to the tee," including successfully completing sex offender treatment. She explained that, while his behavior was consistent with that of a "situational" pedophile, he was remorseful and shameful about that past misconduct and there was no evidence to suggest that he had ever sexually abused this child. Jeffrey Fox, the psychologist who extensively evaluated the father throughout the course of more than 20 weekly sessions of sex offender relapse treatment, opined that the father posed a low risk to reoffend. Considering the totality of the circumstances, we find a sound and substantial basis for Supreme Court's determination that permitting the child to relocate to California would not be in her best interests (see Matter of Feathers v Feathers, 95 AD3d at 1623-1624; Matter of Pizzo v Pizzo, 94 AD3d at 1353; Matter of Scheffey-Hohle v Durfee, 90 AD3d at 1425-1429; Matter of Munson v Fanning, 84 AD3d 1483, 1484-1485 [2011]; Matter of Mallory v Jackson, 51 AD3d 1088, 1090 [2008], lv denied 11 NY3d 705 [2008]).

Supreme Court's denial of the mother's motion, following the close of all proof, to stay the relocation proceeding based upon her claim that the child had recently disclosed that the father had sexually abused her in the past causes us concern. While this allegation, if proven, would not necessarily be determinative of the relocation issue (cf. Matter of Karen F., 208 AD2d 994, 996 [1994]; see generally Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996], supra), it would certainly be afforded weight in determining what is in the child's best interests (see e.g. Matter of Lori DD. v Shawn EE., 100 AD3d 1305, 1306-1307 [2012]). Notably, however, while refusing to consider the claim in the context of the relocation proceeding, Supreme Court immediately converted the motion to a petition to modify the father's visitation and scheduled a prompt psychological evaluation of the child. We further note that, as a general rule, the decision whether to permit the introduction of evidence after the close of proof is a matter committed to the sound discretion of the trial court (see CPLR 4011; Feldsberg v Nitschke, 49 NY2d 636, 643 [1980]; Matter of Julia BB. [Diana BB.], 42 AD3d 208, 215 [2007], lvs denied 9 NY3d 815 [2007]; Shapiro v Shapiro,

151 AD2d 559, 560 [1989]), and the motion here was made approximately six weeks after the close of all proof and on the eve of Supreme Court's decision on the relocation issue. Given the particular facts and circumstances of this case, we cannot say that the manner in which Supreme Court chose to address the mother's allegations constituted an improvident exercise of its considerable discretion.

Lahtinen, Garry and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.