In the Matter of JAMES BATCHELDER, Respondent, v KEELEY BONHOTEL, Appellant. (And Two Other Related Proceedings.) [966 NYS2d 545]—

Egan Jr., J. Appeal from an order of the Family Court of Warren County (Breen, J.), entered January 17, 2012, which, among other things, partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of a son (born in 2008). After the parties separated in 2009, they consented to an order of joint legal custody, with primary physical custody to the mother and alternating weekend visitation to the father. Thereafter, the father consistently exercised his visitation with the child, and the child, in turn, benefitted from meaningful contact with both of his parents.

In March 2011, the mother was evicted from her apartment in Warren County; within a matter of days, the mother made plans to move with the child—and two of her children from prior relationships—to Decatur, Alabama in order to live with her fiancé, whom she had met online five months earlier. The mother did not inform the father of her plans until the night prior to the scheduled departure, nor did she obtain the father's consent or Family Court's permission prior to relocating.[1]

The father promptly commenced two of the proceedings now before us—one alleging a violation of the prior custody order and the other seeking, among other things, sole legal and physical custody of the child. In response, the mother commenced a separate proceeding requesting, among other things, permission to relocate with the child to Alabama. Family Court ordered that the child be returned to New York and awarded temporary custody to the father.

At the conclusion of the hearing that followed, Family Court found, among other things, that the father met his burden of establishing a substantial change in circumstances warranting a modification of the prior custody order and, further, that the proposed relocation was not in the child's best interests. Accordingly, Family Court awarded the parties joint legal custody of the child with primary physical custody to the father and visitation to the mother.

---

1. Although Family Court indicated that the mother filed a petition seeking to relocate with the child two days prior to informing the father of the move, that petition does not appear in the record on appeal.

Initially, the parties do not dispute that the mother's relocation to Alabama constituted a sufficient change in circumstances warranting modification of the existing custody arrangement; hence, the issue distills to whether Family Court properly denied the mother's request to relocate and, further, whether the resulting award of physical custody to the father was in the child's best interests (*see Matter of Sofranko v Stefan*, 80 AD3d 814, 815 [2011]). As the party seeking to relocate, the mother bore the burden of proving by a preponderance of the credible evidence that the proposed relocation would be in the child's best interests (*see Matter of Shirley v Shirley*, 101 AD3d 1391, 1392 [2012]; *Matter of Munson v Fanning*, 84 AD3d 1483, 1484 [2011]; *Matter of Sofranko v Stefan*, 80 AD3d at 815). Resolution of that issue, in turn, requires a court to consider numerous factors, "including the child's relationship with each parent, the effect of the move on contact with the noncustodial parent, the potential enhancement to the custodial parent and child due to the move, and each parent's motives for seeking or opposing the move" (*Matter of Sara ZZ. v Matthew A.*, 77 AD3d 1059, 1060 [2010]; *see Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *Matter of Williams v Williams*, 90 AD3d 1343, 1344 [2011]). Given that Family Court is in the best position to make factual findings and credibility determinations, its decision will not be disturbed if it is supported by a sound and substantial basis in the record (*see Scott VV. v Joy VV.*, 103 AD3d 945, 946 [2013], *lv denied* 21 NY3d 909 [2013]).

Although the mother contends that her fear of impending homelessness prompted her relocation out of state, the record reflects that the mother's desire to be with her fiancé, whom she had met only months before, was the true impetus behind the move. Notably, the mother quit her job—her sole source of income aside from child support and government assistance—in order to relocate to Alabama, where she remains completely dependent upon her fiancé and has neither a plan nor the means by which to support her children should her romantic relationship terminate.[2] Indeed, at the time of the hearing, the mother was unemployed and living off of the child support received for another child and her fiance's income. To the extent that the mother asserted that Alabama offered greater diversity and enhanced *cultural opportunities* for the child, no proof was submitted to substantiate these claims.

---

**2.** As of the hearing, although the mother and her fiancé had scheduled a wedding date, both were still married to their former spouses and had taken no affirmative steps to terminate their previous marriages.

Similarly, although the mother testified that Alabama schools are superior in that "they really focus on the needs of the child," she failed to offer any proof from which Family Court reasonably could conclude that the Alabama school system was a significant improvement over the school system in Warren County (*see Matter of Scheffey-Hohle v Durfee*, 90 AD3d 1423, 1428 [2011], *appeal dismissed* 19 NY3d 876 [2012]; *Matter of Williams v Williams*, 90 AD3d at 1344-1345).[3]

As to the quality of the child's relationship with his respective parents, it is clear that each parent loves the child and desires to spend time with him and that he, in turn, has a close and loving relationship with each of them. Although the mother enjoyed primary physical custody up until the time she relocated to Alabama, the father consistently exercised his visitation, and it is clear from the record that the proposed relocation would be highly detrimental to the father's existing relationship with the child—particularly in light of the distance involved and the father's testimony as to his limited ability to fund transportation between New York and Alabama.

For these reasons, we are not persuaded that the mother has met her burden of establishing that relocation would substantially enhance the child's economic, emotional or educational well-being. Accordingly, we find a sound and substantial basis for Family Court's determination that permitting the child to relocate to Alabama would not be in his best interests (*see Matter of Williams v Williams*, 90 AD3d at 1344-1345; *Matter of Munson v Fanning*, 84 AD3d at 1485).

We also see no reason to disturb Family Court's decision to award primary physical custody of the child to the father. In contrast to the mother's complete dependence upon her fiancé for shelter and financial support, the father is gainfully employed and has established that he has the financial ability to care for the child. Although it is true that neither the mother nor the father own their respective residences (the father's girlfriend owns the trailer in which he resides), unlike the mother and her fiancé, the father and his girlfriend have lived together for a number of years and, therefore, are better positioned to offer the child a stable living environment. Additionally, the father's girlfriend has a son from a prior relationship who is close in age to the subject child, and the two enjoy a positive relationship.

Finally, the record reflects that the father recognizes the

---

**3.** Notably, the mother indicated that her dissatisfaction with the middle school stemmed primarily from the difficulties she encountered in obtaining bus transportation for her older son, who has a sensitivity to cold weather.

importance of the mother-son relationship and has demonstrated a willingness to foster a positive relationship between the child, the mother and himself by, among other things, facilitating video conversations between the mother and the child via Skype approximately two to three times per week. The mother, on the other hand, does not appear to recognize or value the relationship between the father and the child—referring to the father as the child's "biological father," omitting him from what she regards as the child's family and, significantly, failing to provide the father with her new contact information upon arriving in Alabama. As an example of the mother's apparent hostility in this regard, the father testified that the mother repeatedly has instructed the child that the father's house "is not [his] home," stating instead, "[W]hen you are with Mom[,] you are home. You are just *with* your Dad, that is not your home" (emphasis added).

Despite both parents' desire to spend time with the child, Family Court reasonably concluded that the father was the parent more likely to foster a positive relationship between the child and the noncustodial parent and, further, was better able to provide a stable living environment for the child. As Family Court's decision to award primary physical custody to the father is supported by a sound and substantial basis in the record as a whole, it will not be disturbed (*see Matter of Ames v Ames*, 97 AD3d 914, 916-917 [2012], *lv denied* 20 NY3d 852 [2012]). The mother's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Lahtinen, J.P., McCarthy and Garry, JJ., concur. Ordered that the order is affirmed, without costs.