*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    February 19, 2015                    517826
_____

In the Matter of SEAN M.
    PALMATIER,
                        Respondent,

        v                                      MEMORANDUM AND ORDER

AMELIA E. CARMAN,
                        Appellant.
_____


Calendar Date:    January 16, 2015

Before:  Lahtinen, J.P., Egan Jr., Lynch and Devine, JJ.

                    _____


        John M. Scanlon, Binghamton, for appellant.

        Christopher A. Pogson, Binghamton, for respondent.

        Alena Van Tull, Binghamton, attorney for the child.

                    _____


Egan Jr., J.

        Appeal from an order of the Family Court of Broome County
(Connerton, J.), entered June 24, 2013, which granted
petitioner's application, in a proceeding pursuant to Family Ct
Act article 6, to modify a prior order of custody.

        Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the unmarried parents of a child
born in 2006.[1]  In May 2010, the parties consented to an order

_____

        [1]  An order of filiation was entered in December 2006, and
the father was ordered to pay child support beginning in March
2007.

awarding the mother sole custody of the child with increasing periods of visitation to the father.  That order was modified in October 2011 – again upon consent of the parties – to provide for, among other things, alternating weekend visitations for the father.  The child resided with the mother until October 2012, at which time the child was removed from the mother's residence – a filthy, rundown trailer littered with animal feces – by the local department of social services and placed with the father.  Shortly thereafter, the father commenced the instant proceeding seeking custody.  Following a hearing, Family Court awarded the parties joint legal custody, with primary physical custody to the father and visitation to the mother on the first, third, fourth and, if applicable, fifth weekend of every month – plus additional periods of visitation.  This appeal by the mother ensued.

We affirm.  "A parent seeking to modify an existing custody order bears the burden of demonstrating a sufficient change in circumstances since the entry of the prior order to warrant modification thereof in the child[]'s best interests" (Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1348 [2014], lv dismissed and denied 24 NY3d 937 [2014] [internal quotation marks and citations omitted]; see Matter of Hayward v Campbell, 104 AD3d 1000, 1000 [2013]).  Here, the record reflects that, at the time that the child was removed from the mother's care in October 2012, the child was living in what could only be described as squalid and fetid conditions – specifically, the child was residing in a filthy, dilapidated trailer that was overrun with multiple dogs, cats and rabbits, covered in animal feces and overflowing litter boxes and infested with flies and cockroaches.  According to the caseworker who visited the mother's residence, the smell of urine and feces was evident immediately upon entering the trailer, and the room that the child shared with the mother and the mother's boyfriend was crowded with rabbit cages and reeked of a "foul odor."  Although the child had her own bed in this shared room, neither her bed nor her mother's bed had sheets.  Additionally, the father testified that, during the relevant time period, the child would appear for visitations in stained, mismatched clothes with her hair "tangly and in knots" and smelling of, among other things, kerosene.  Such proof, in our view, is more than sufficient to demonstrate the requisite

change in circumstances, thereby triggering a best interests
analysis (see Matter of Michael GG. v Melissa HH., 97 AD3d 993,
994 [2012]; see also Matter of Eunice G. v Michael G., 85 AD3d
1339, 1340 [2011]; Matter of Cole v Reynolds, 8 AD3d 703, 704
[2004]).

        "The primary concern in any custody matter is, of course,
the best interests of the child[] and, to that end, Family Court
must give due consideration to, among other things, each parent's
ability to furnish and maintain a suitable and stable home
environment for the child[], past performance, relative fitness,
ability to guide and provide for the child[]'s overall well-being
and willingness to foster a positive relationship between the
child[] and the other parent" (Matter of Darrow v Darrow, 106
AD3d 1388, 1390 [2013] [internal quotation marks and citations
omitted]; see Matter of Sonley v Sonley, 115 AD3d 1071, 1072
[2014]; Matter of Hayward v Campbell, 104 AD3d at 1001).
Applying that standard to the matter before us, there is no
question that Family Court's decision to award primary physical
custody to the father is supported by a sound and substantial
basis in the record.

        Although the mother had — by the time of the hearing —
moved to a new trailer (located a short distance away from her
prior residence), the record makes clear that, prior to the
child's removal in October 2012, she permitted the child to live
in absolutely deplorable conditions.  In addition to the sanitary
issues previously outlined, the child resided in this two-bedroom
trailer with her mother, the mother's boyfriend and her maternal
grandparents, the latter of whom cared for the child while the
mother and her boyfriend worked the third shift at a local
business.  Although the mother insisted that the child was never
left alone with her grandfather, the record reflects that the
child's grandfather is a convicted sex offender.  The record
further reflects that the child engaged in various forms of self
harm while she was in the mother's care and, during the 2011-2012
school year, was absent on 44 occasions and tardy on 34 occasions
with 17 early dismissals.  While the mother testified that her
new work schedule would make it easier for her to get up in the
morning and get the child ready for school in a timely fashion,
she acknowledged that she still was working an overnight shift,

which would require the child to spend five nights each week with her maternal aunt.

Although the father admittedly had little contact with the child until he was awarded visitation in May 2010, there is no dispute that he regularly exercised his visitation rights from that point on.  At the time of the hearing, the father was residing in a four-bedroom house with his fiancee and their two children – with the parties' child sharing a bedroom with her half sister.  As the father had a full-time job, his fiancee would get the child ready for school in the morning, and he typically would get the child off of the school bus in the afternoon.  Since going to live with the father, the child has missed only three days of school and is seeing a counselor to address her behavioral issues.  Although the parties do not appear to have a great deal of contact with one another, the father's testimony indicates a willingness to foster a positive relationship between the child and the mother, as well as an ability to behave in a cooperative fashion and conduct himself in a manner consistent with the child's best interests.

Based upon such proof, Family Court concluded that the father is more able to provide a clean, safe, stable and supportive home for the child than the mother and that the child's best interests, in turn, would be served by granting the parties' joint legal custody with primary physical custody to the father.  Upon our review of the record, we discern no basis upon which to disturb Family Court's sound resolution of this matter. The mother's remaining arguments on this point, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Lahtinen, J.P., Lynch and Devine, JJ., concur.

ORDERED that the order is affirmed, without costs.



ENTER:

Robert D. Mayberger
Clerk of the Court