## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:  April 30, 2015                    518338
_____

In the Matter of OLIVER T.
   LODGE,
                        Respondent,

      v
                                          MEMORANDUM AND ORDER

FERUZA LODGE,
                        Appellant.

(And Another Related Proceeding.)
_____


Calendar Date:  March 23, 2015

Before:  McCarthy, J.P., Egan Jr., Devine and Clark, JJ.

                    _____


      Marshall Nadan, Kingston, for appellant.

      Daniel Gartenstein, Kingston, for respondent.

      Ted J. Stein, Woodstock, attorney for the child.

                    _____


Egan Jr., J.

      Appeal from an order of the Family Court of Ulster County
(McGinty, J.), entered December 31, 2013, which, among other
things, partially granted petitioner's application, in two
proceedings pursuant to Family Ct Act article 6, to modify a
prior order of custody.

      Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the divorced parents of a son (born
in 2008).  Prior to separating, the parties resided together with
the child in the Town of Saugerties, Ulster County; the mother
was employed as a nurse's aide at Kingston Hospital in the City

of Kingston, Ulster County, and the father, who previously worked as, among other things, a social worker, was receiving Social Security disability payments due to a physical ailment. By order entered April 8, 2011, Family Court awarded the parties joint legal custody with primary physical custody to the mother and such parenting time to the father as the parties could agree upon.[1] Despite the provisions of this order, the child thereafter spent substantial periods of time with the father — in large measure due to the mother's work schedule, which often required her to work nights and/or 12-hour shifts.

In August 2012, the mother — citing rumors of a possible hospital merger and fearing a potential layoff — moved to Brooklyn, where she secured work as a home health aide and shared a one-bedroom apartment with the child's maternal grandmother, who is a native of Uzbekistan. Shortly thereafter, the mother took the child to live with her and the grandmother in Brooklyn, and the father commenced the first of these proceedings seeking "full custody" of his son. In response, the mother cross-petitioned for permission to relocate with the child. Family Court issued a temporary order in November 2012 that provided for alternating physical custody of the child on a weekly basis. Following a hearing, Family Court partially granted the father's application — awarding the parties joint legal custody with primary physical custody to the father and specified periods of visitation to the mother — and otherwise denied the requested relief. This appeal by the mother ensued.

We affirm. "As the party seeking to relocate, the mother bore the burden of establishing by a preponderance of the credible evidence that the proposed relocation would be in the child's best interest" (Matter of Scheffey-Hohle v Durfee, 90 AD3d 1423, 1425 [2011], appeal dismissed 19 NY3d 876 [2012] [citations omitted]; see Matter of Stetson v Feringa, 114 AD3d 1089, 1090 [2014]). When evaluating a relocation request, a court must "consider numerous factors, including the child's

_____

[1] Although the order itself is silent in this regard, it appears from the record that the April 2011 order was entered on consent.

relationship with each parent, the effect of the move on contact with the noncustodial parent, the potential enhancement to the custodial parent and child due to the move, and each parent's motives for seeking or opposing the move" (Matter of Batchelder v BonHotel, 106 AD3d 1395, 1396 [2013] [internal quotation marks and citation omitted]; accord Matter of Cook-Lynch v Valk, 126 AD3d 1062, ___, 2015 NY Slip Op 01841, * 1 [2015]; see Matter of Scheffey-Hohle v Durfee, 90 AD3d at 1425). Inasmuch as Family Court is in the best position to make the requisite factual findings and credibility determinations, its resolution of these issues — if supported by a sound and substantial basis in the record — will not be disturbed upon appeal (see Matter of Cowper v Vasquez, 121 AD3d 1341, 1342 [2014], lv denied 24 NY3d 913 [2015]; Matter of Jones v Soriano, 117 AD3d 1350, 1351 [2014], lv denied 24 NY3d 901 [2014]).

Although the mother testified that she moved to Brooklyn because she feared a potential loss of employment due to a rumored hospital merger, she acknowledged that she left her job at Kingston Hospital voluntarily and, aside from "just kind of look[ing] around Kingston" for another job, the mother offered scant evidence of her efforts to secure alternate local employment (see Matter of Michelle V. v Brandon V., 110 AD3d 1319, 1321 [2013]). Similarly, while the mother contended that she was better off financially living in Brooklyn because she was able to split expenses with the child's grandmother,[2] she conceded that she was earning the same hourly wage in Brooklyn as she had in Kingston, that she was financially dependent upon the grandmother in order to make ends meet and that she had not considered how she would cover her expenses should the grandmother elect to return to her husband and remaining children in her native country (see Scott VV. v Joy VV., 103 AD3d 945, 947 [2013], lv denied 21 NY3d 909 [2013]).[3] Additionally, the mother

---

[2]   Both the mother and the grandmother testified that the grandmother was unable to find a job in Kingston due to her inability to speak English.

[3]   Indeed, during the course of the hearing, the grandmother returned to Uzbekistan for approximately four months, during

offered no evidence that the schools in Brooklyn were superior to the educational opportunities available to the child in Ulster County (see Matter of Bracy v Bracy, 116 AD3d 1172, 1174 [2014]; Matter of Stetson v Feringa, 114 AD3d at 1090-1091; Matter of Scheffey-Hohle v Durfee, 90 AD3d at 1428) where, according to his kindergarten teacher, the child was thriving.  Finally, there is no question that permitting the child to relocate to Brooklyn would substantially curtail the father's contact with the child (see Matter of Cook-Lynch v Valk, 2015 NY Slip Op at *2).  Under these circumstances, the mother simply did not meet her burden of demonstrating that the proposed move would substantially enhance the child's educational, economic or emotional well-being (see id.; Matter of Seeley v Seeley, 119 AD3d 1164, 1165-1166 [2014]; Matter of Bracy v Bracy, 116 AD3d at 1173-1174).

Turning to the father's application, the mother does not dispute that her relocation to Brooklyn constituted a change in circumstances (see Matter of Sofranko v Stefan, 80 AD3d 814, 815 [2011]).  Hence, we are left to consider whether – consistent with the child's best interests – modification of the prior order of custody was warranted (see Matter of Clark v Hart, 121 AD3d 1366, 1367 [2014]).  In resolving this inquiry, a court must consider a number of relevant factors, including "each parent's ability to furnish and maintain a suitable and stable home environment for the child[], past performance, relative fitness, ability to guide and provide for the child[]'s overall well-being and willingness to foster a positive relationship between the child[] and the other parent" (Matter of Palmatier v Carman, 125 AD3d 1139, 1140 [2015] [internal quotation marks and citations omitted]; see Matter of Lawrence v Kowatch, 119 AD3d 1004, 1005 [2014]; Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1348-1349 [2014], lv denied and dismissed 24 NY3d 937 [2014]).  Again, Family Court's determinations in this regard are entitled to deference (see Matter of Joshua UU. v Martha VV., 118 AD3d 1051, 1052 [2014]).

_____

which time the mother utilized funds given to her by the grandmother in order to meet her expenses.

As a starting point, we have no quarrel with Family Court's decision to continue the award of joint legal custody, as the record reflects that the parties have — despite their differences — managed to work together in a cooperative fashion for the good of their child and have demonstrated both an appreciation of and a willingness to foster the child's relationship with the other parent. As for Family Court's decision to award primary physical custody to the father, the record demonstrates that both parents are possessed of modest economic means and live in one-bedroom apartments — with the child occupying the bedroom and the relevant parent sleeping in the main living space when the child is in residence. Both parents also enjoy a positive and loving relationship with the child, engage in similar extracurricular activities with him, are able to provide him with appropriate health care/insurance and have extended family living near their respective communities. That said, the mother's work schedule requires her to put the child in an after-school program (at least when the grandmother is unavailable), whereas the father, who does not work due to his disability, is available to care for the child whenever the child is not in school. Additionally, as noted previously, the child's teacher testified that he was thriving in his current school and attested to the father's substantial involvement with the child's education. The foregoing considerations, when combined with the mother's admitted financial dependence upon the grandmother, leads us to conclude that Family Court correctly found that the father "demonstrated a superior ability to promote stability in the child's life." Accordingly, the underlying order is affirmed.

McCarthy, J.P., Devine and Clark, JJ., concur.

ORDERED that the order is affirmed, without costs.

ENTER:

Robert D. Mayberger
Clerk of the Court