## State of New York
## Supreme Court, Appellate Division
## Third Judicial Department

Decided and Entered:   June 2, 2016                    521206
_____

In the Matter of O'DALE UU.,
                    Respondent,

          v                              MEMORANDUM AND ORDER

LISA UU.,
                    Appellant.
_____

Calendar Date:   March 24, 2016

Before:   McCarthy, J.P., Egan Jr., Rose, Devine and Clark, JJ.

_____

          Ted J. Stein, Woodstock, for appellant.

          Daniel Gartenstein, Kingston, for respondent.

          Betty J. Potenza, Highland, attorney for the child.

_____

Egan Jr., J.

          Appeal from an order of the Family Court of Ulster County
(Mizel, J.), entered May 27, 2015, which granted petitioner's
application, in a proceeding pursuant to Family Ct Act article 6,
to modify a prior order of custody.

          Petitioner (hereinafter the father) and respondent
(hereinafter the mother) are the divorced parents of a son (born
in 2005).  In May 2007, the parties entered into an order on
consent, pursuant to the terms of which they were awarded joint
legal custody of the child with primary physical custody to the
mother and visitation to the father "as the parties may agree."
This arrangement proved to be workable until the fall of 2013
when the child began exhibiting behavioral problems —
characterized by the mother as "meltdowns" — wherein the child

would become rebellious and refuse to listen to her.  The mother initially sought the father's assistance during these incidents, in response to which the father would go to the mother's residence and intervene.  Subsequently, however, the mother began giving the child Benadryl — an antihistamine — "to help him fall asleep."  By her own admission, the mother gave the child two or three times the recommended dosage of this medication — without a physician's approval and without the child displaying any symptoms that the drug was designed to treat — approximately "three or four times a week" over the course of three months.

After observing the child in what he described as a zombie-like state, the father commenced this proceeding in December 2013 seeking sole custody.  Shortly thereafter, the Ulster County Department of Social Services (hereinafter DSS) requested an emergency removal hearing and filed a neglect petition against the mother.  The child was placed in the father's custody and a temporary order of protection was entered precluding the mother from having any visitation with the child except under the supervision of DSS.[1]  In May 2014, the mother entered an admission with respect to the neglect petition, and the matter was adjourned for a dispositional hearing.

In January 2015, the parties convened for a dispositional hearing on the neglect petition and a fact-finding hearing on the father's custody petition.  At the conclusion of the dispositional phase of the proceeding, the mother was placed under the supervision of DSS for a period of six months, and the child was to remain with the father pending the outcome of the custody hearing.  Following a three-day fact-finding hearing and a Lincoln hearing, Family Court awarded the father sole legal and physical custody of the child and granted the mother visitation on alternate weekends from noon on Saturday until 4:00 p.m. on Sunday, together with such further times as the parties could agree.  The mother now appeals, contending that Family Court's custody determination lacks a sound and substantial basis in the

---

[1]  The temporary order of protection was extended on multiple occasions, and the child has remained in the father's custody since December 2013.

record.

As a starting point, there is no question that the finding of neglect against the mother — based upon her admission that she repeatedly "drugged" her child with over-the-counter medication, for no medical purpose and in a dosage far exceeding what was recommended for the child's age, over the course of three months — was more than sufficient to meet the father's initial burden of demonstrating a change in circumstances to warrant an inquiry into whether the best interests of the child would be served by modifying the existing custody arrangement (see Matter of Ze'Nya G. [Nina W.], 126 AD3d 566, 566 [2015]; Matter of Christy S. v Phonesavanh S., 108 AD3d 1207, 1208 [2013]; Matter of Mark RR. v Billie RR., 95 AD3d 1602, 1602-1603 [2012]). Relevant factors to consider in the best interests analysis include, among other things, "each parent's ability to furnish and maintain a suitable and stable home environment for the child, past performance, relative fitness, ability to guide and provide for the child's overall well-being and willingness to foster a positive relationship between the child and the other parent" (Matter of Zahuranec v Zahuranec, 132 AD3d 1175, 1176 [2015] [internal quotation marks and citations omitted]; accord Matter of Lodge v Lodge, 127 AD3d 1521, 1524 [2015]; see Matter of Tod ZZ. v Paula ZZ., 113 AD3d 1005, 1006 [2014]).

While the record reflects that, prior to December 2013, the mother was the child's primary caregiver, the record also makes clear that the father was a consistent presence in the child's life. As to financial resources, the mother and father each were employed at the time of the hearing and testified as to their respective abilities to accommodate the child's schedule. No issues were raised with respect to the suitability of either parent's physical residence and, during the periods of time that the child was residing in the mother's and the father's respective households, it appears that each was involved in the child's schooling and made appropriate efforts to respond to any academic concerns.

That said, there is no question that the mother's actions here demonstrated a flawed understanding of her role as a parent and evidenced a serious lack of judgment with respect to her

child's health, safety and overall well-being. Although the mother insisted that she did not drug the child in order to control his rebellious behavior and assured Family Court that she had learned her lesson in this regard, the fact remains that, instead of consulting with the child's physician regarding the child's alleged difficulties in falling asleep, the mother repeatedly gave her child medication — for no medical purpose and well in excess of the recommended dosage — over a period of months and until such time as the child was removed from her care by DSS. Such behavior hardly qualifies as an isolated or transient event, and the mother's further difficulties in managing the child's behavior — as evidenced by the number of occasions upon which the father admittedly was called to intervene and assist the mother in getting the child to perform daily tasks, such as showering or brushing his teeth — are well-documented in the record.[2] Finally, although the father did not tender any medical proof on this point, he did testify that the child was underweight while living with the mother and described his efforts to obtain counseling for the child after the child displayed serious behavioral issues, such as pulling out his hair and threatening to harm himself. Accordingly, notwithstanding the mother's compliance with DSS's directives, we conclude — upon due consideration of all the relevant factors — that the father is more capable of providing the child with a safe, secure and stable environment and discern no basis upon which to disturb Family Court's resolution of the custody issue.[3]

As to visitation, "[i]nasmuch as our authority in custody and visitation matters is as broad as that of Family Court and

_____

[2] On one occasion, when the child "was having a really bad meltdown" and the mother was unable to reach the father, she contacted local law enforcement for assistance.

[3] Although the parties' relationship does not appear to be marred by the level of combativeness and acrimony that typically is associated with the denial of an award of joint legal custody, the mother's admitted neglect of the child and her corresponding lack of parental insight and judgment — in our view — renders joint custody unworkable here.

the record is sufficiently complete to permit an informed modification of the visitation provisions" of the underlying order (Matter of Knox v Romano, 137 AD3d 1530, 1532 [2016]; see Matter of Valentine v Valentine, 3 AD3d 646, 647 [2004]), and given that the mother previously was a consistent and significant presence in the child's life, we find that an increase in the mother's parenting time is in the child's best interests. Accordingly, commencing 10 days from the date of this Court's decision, the mother's alternating weekend parenting time will be from Friday at the close of school, or beginning at 3:00 p.m. if school is not in session, until Monday morning at the start of school, or 9:00 a.m. if school is not in session. In addition, the mother shall have a total of two weeks — consecutive or nonconsecutive — of uninterrupted parenting time with the child during the summer recess from school.

As a final matter, to the extent that the attorney for the child on appeal contends that the child was not afforded the effective assistance of counsel at the hearing, we disagree. In addition to counsel's participation and advocacy at the fact-finding hearing, counsel questioned the child during the course of the Lincoln hearing — calling to Family Court's attention relevant conversations and issues that the child had related to counsel that were not developed during the court's examination of the child. As the attorney for the child otherwise effectively communicated her client's wishes, we are satisfied that the child received the effective assistance of counsel.

McCarthy, J.P., Rose, Devine and Clark, JJ., concur.

ORDERED that the order is modified, on the facts, without costs, by awarding respondent additional parenting time as set forth in this Court's decision, and, as so modified, affirmed.


ENTER:

Robert D. Mayberger
Clerk of the Court