Matter of O'Hara v DeMarsh (2018 NY Slip Op 03197)





Matter of O'Hara v DeMarsh


2018 NY Slip Op 03197


Decided on May 3, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 3, 2018

525445

[*1]In the Matter of JASON T. O'HARA, Respondent,
v
BETHANY L. DeMARSH, Appellant. (Proceeding No. 1.)
In the Matter of BETHANY L. DeMARSH, Appellant,
v
JASON T. O'HARA, Respondent. (Proceeding No. 2.)

Calendar Date: March 29, 2018

Before: Garry, P.J., Egan Jr., Devine, Aarons and Rumsey, JJ.


Newell Klingebiel & Rehm, Glens Falls (Ronald L. Newell of counsel), for appellant.
Jessica H. Vinson, Glens Falls, attorney for the child.


Egan Jr., J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Warren County (Kershko, J.), entered October 14, 2016, which, among other things, partially dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the parties' child.
Jason T. O'Hara (hereinafter the father) and Bethany L. DeMarsh (hereinafter the mother) are the unwed parents of a child (born in 2007). The parties lived together in Warren County for a number of years and, upon separating in July 2012, informally shared parenting [*2]time with the child. In March 2016, the father commenced proceeding No. 1 seeking primary physical custody of the child based upon the mother's apparent intent to relocate with the child. The mother thereafter commenced proceeding No. 2 seeking joint legal custody and primary physical custody of the child based on her desire to relocate from Warren County to Rensselaer County in order to, among other things, live with her fiancé and his two children from a previous relationship.
Following both a fact-finding hearing and a Lincoln hearing, Family Court awarded the parties joint legal custody, with primary physical custody to the mother and significant parenting time to the father, determining that the best interests of the child were served by having the child continue to reside in Warren County and remain at her current school district. Family Court's order also conditionally provided that, in the event that the mother elected to relocate, she would not be foreclosed from doing so; however, in such an instance, primary physical custody would be awarded to the father, with scheduled visitation to the mother. The mother now appeals.[FN1]
We affirm. Although the mother's proposed relocation with the child from Warren County to Rensselaer County served as the impetus for the filing of the instant custody petitions, insofar as Family Court had yet to render an initial custody determination, strict application of the relocation factors set forth in Matter of Tropea v Tropea (87 NY2d 727 [1996]) was not required (see Matter of Finkle v Scholl, 140 AD3d 1290, 1291 [2016]; Matter of Hill v Dean, 135 AD3d 990, 991 [2016]). As Family Court appropriately realized, an initial custody determination must be based on the best interests of the child (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]), upon consideration of such factors as "the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being" (Matter of Whetsell v Braden, 154 AD3d 1212, 1213 [2017] [internal quotation marks and citation omitted]). "[W]here, as here, an initial custody determination involves one parent who wishes to relocate with the child, the parent's 'decision to reside in a distant locale is a very important factor among the constellation of factors to be considered in arriving at a best interests determination, particularly where there is evidence that it would detrimentally affect the other parent's relationship with the child'" (Matter of Eldad LL. v Dannai MM., 155 AD3d 1336, 1339 [2017], quoting Matter of Bush v Lopez, 125 AD3d 1150, 1150 [2015]). Because Family Court is in a superior position to assess witness credibility and make findings of fact, this Court will not disturb Family Court's decision so long as it is supported by a sound and substantial basis in the record (see Matter of Paluba v Paluba, 152 AD3d 887, 889 [2017]; Matter of Hempstead v Hyde, 144 AD3d 1438, 1439 [2016]; Matter of Lodge v Lodge, 127 AD3d 1521, 1522-1523 [2015]).
Here, there is no dispute that each parent shares a close, caring and loving relationship with the child and has endeavored to provide for her well-being. While the mother has been the child's primary caregiver since the parties' separation, the father has provided significant parenting time, with the parties often coordinating such parenting time to accommodate their respective work schedules and the child's school schedule. Notably, both parents have established themselves as capable guardians and have demonstrated that they can provide a stable home environment for the child. The father testified that, for the past 17 years between October and May, he has worked at Gore Mountain Ski Area and is presently employed as the director of the terrain parks. The father also owns and operates a small farm where, in the non-winter months, he grows heirloom vegetables. The father testified that he presently lives by himself and [*3]resides in a three-bedroom house where the child has her own bedroom [FN2]. The mother testified that, over the past four years, she has been employed in various administrative positions and is currently employed managing and cleaning cabins and as a personal caretaker for an elderly woman. She presently owns a three-bedroom home in which the child also has her own bedroom. Both parents also testified to engaging in a host of age-appropriate activities with the child, with the father testifying that he and the child enjoy cooking, cleaning, farming, watching movies and skiing together, while the mother testified that she and the child enjoy hiking, camping, riding bikes/scooters, playing card games and doing make-overs.
With regard to each parent's relative fitness, the mother alleged that the father occasionally "co-sleeps" with the child and raised concerns about the father's lack of involvement in the child's education based on his admitted failure to attend certain parent-teacher meetings. There were no allegations of any inappropriate conduct, however, and the father testified that he regularly picks up and drops off the daughter at school, has attended numerous open houses over the years and has had occasion to speak with the child's current teacher on a number of occasions when picking the child up from school. Moreover, the mother's assertion that the father harbors animosity toward her such that it would be a struggle for him to foster a relationship between her and the child is belied by the record. Since the parties' separation, the parties have demonstrated a consistent willingness to foster a positive relationship between the child and the other parent as evidenced by the fact that they effectively coparented the child and adhered to a consistent parenting schedule without the need for court intervention throughout the four years preceding the mother's proposed relocation. Perhaps tellingly, by all accounts the child thrived under the parties' informal custody arrangement — she has cultivated numerous friendships, is excelling in her studies and participates in various extracurricular activities at her school.[FN3]
With regard to the proposed relocation, we find that the mother failed to establish that relocating with the child to Rensselaer County was in the child's best interests. Although the mother's fiancé testified that he owns a four-bedroom home where the child would have her own bedroom, there is nothing in the record indicating that the child's living situation is currently unsatisfactory. The mother testified that the subject relocation would provide her with numerous higher paying job opportunities, and the child's proposed school district in Rensselaer County would provide more extracurricular opportunities for the child than are presently available at her current school; however, she submitted no documentary evidence to support either of these [*4]conclusory claims (see Matter of Southammavong v Sisen, 141 AD3d 905, 906 [2016]; Matter of Bracy v Bracy, 116 AD3d 1172, 1174 [2014]). Further, even assuming that the father stands to gain more parenting time based on the proposed visitation schedule that the mother submitted into evidence, it is undisputed that, in order to take advantage of same, the father would necessarily have to alter his present work schedule to avoid working weekends which, during the winter months, he indicated is not possible based on the nature of the ski/snowboard industry. Regardless, the quality of the child's contact with the father would certainly be negatively impacted, as the child has had the benefit of regular and consistent contact with both parents for the past four years under the parties' informal custody arrangement. Simply put, having the child remain in the community where she has lived her entire life not only allows her to continue having regular interaction with both of her parents and their extended families — who reside in much closer proximity to Warren County than Rensselaer County — it also serves to maintain the stability to which she has grown accustomed and from which she has clearly benefitted. Although the mother has established that she would personally benefit from relocating to Rensselaer County, she provided no proof demonstrating that the child would similarly benefit from such a move (see Matter of Gates v Petosa, 125 AD3d 1161, 1163 [2015]). Accordingly, given the lack of evidence supporting the mother's proposed relocation and having reviewed the totality of the circumstances, we find a sound and substantial basis in the record to support Family Court's determination.
Garry, P.J., Devine, Aarons and Rumsey, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The father did not file a brief with respect to this appeal.

Footnote 2: The father indicated that he is presently dating a woman who has two children of her own and, over the course of the past year, she and her children have enjoyed a friendly relationship with the child. 

Footnote 3: Although not raised by the parties, Family Court's decision disclosed certain information and sentiments that the child shared during the Lincoln hearing. While such disclosure does not constitute an independent basis for disturbing Family Court's order, a child's right to confidentiality during a Lincoln hearing is of paramount concern and Family Court should, in the future, ensure that what transpires during the course thereof remains confidential (see Matter of Lilly NN. v Jerry OO., 134 AD3d 1312, 1315 n 3 [2015]; Matter of Verry v Verry, 63 AD3d 1228, 1229 [2009], lv denied 13 NY3d 707 [2009]; see also Matter of Lincoln v Lincoln, 24 NY2d 270, 272—273 [1969]).