Matter of Brandon PP. v Shalalee QQ. (2023 NY Slip Op 02565)

Matter of Brandon PP. v Shalalee QQ.

2023 NY Slip Op 02565

Decided on May 11, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 11, 2023

534603
[*1]In the Matter of Brandon PP., Respondent,
v
Shalalee QQ., Appellant.

Calendar Date:March 28, 2023

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Ceresia, JJ. 

Lisa K. Miller, McGraw, for appellant.
Adam H. Van Buskirk, Auburn, for respondent.
Natalie B. Miner, Homer, attorney for the child.

Clark, J.
Appeal from an order of the Family Court of Schuyler County (Matthew C. Hayden, J.), entered November 24, 2021, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of the subject child (born in 2013). The mother and the father each have multiple additional children with different people. Pursuant to an order entered in March 2019 (hereinafter the 2019 order) upon the father's default, the mother was granted sole legal and physical custody of the child. In November 2020, after concerns arose that the child was being neglected by the mother, a safety plan was implemented and the child began residing with her maternal grandmother (hereinafter the grandmother) in the City of Buffalo, Erie County. The father, who resides in the City of Niagara Falls, Niagara County, immediately commenced a modification proceeding seeking sole custody of the child.
In December 2020, the Schuyler County Department of Social Services (hereinafter DSS) filed a neglect petition against the mother and her boyfriend (hereinafter the boyfriend) — who is the father of the mother's youngest child (hereinafter the half sister) — alleging that they were misusing drugs and providing the subject child, her half brother and the half sister with inadequate guardianship and supervision. In May 2021, the mother consented to the entry of a finding of neglect and to an order requiring her to keep the boyfriend away from the three children. Following an inquest concerning the boyfriend, Family Court found that the neglect allegations regarding the three children were proven and issued an order of protection requiring him to stay away from them. Later, the court granted the boyfriend's application to allow him contact with the half sister "with a supervisor approved by [DSS] and under conditions approved by [DSS]" but denied his application as it pertained to the subject child and her half brother.
In June 2021, the father amended the instant petition seeking custody and primary physical placement of the subject child. Pursuant to a temporary order, the father began having consistent parenting time with the child every other weekend. Soon after, the subject child, her half brother and the half sister were returned to the mother's care in Schuyler County. Following a fact-finding hearing, Family Court granted the parties joint legal custody of the subject child, with primary physical custody to the father and specified periods of parenting time to the mother.[FN1] The mother appeals.
Initially, as the mother concedes, Family Court properly found that that the finding of neglect established a sufficient change in circumstances that required Family Court to conduct an inquiry into whether modifying the 2019 order served the child's best interests (see Matter of Kathleen K. v Daniel L., 177 AD3d 1130, 1132 [3d Dept [*2]2019]; Matter of Mariah K. [Rachael K.-Jay L.], 165 AD3d 1379, 1381 [3d Dept 2018]; Matter of O'Dale UU. v Lisa UU., 140 AD3d 1249, 1250 [3d Dept 2016]). However, the mother contends that the court erred in granting the father primary physical custody of the child.[FN2] As such, "the only issue before us is whether the child's best interests were served by Family Court's order" (Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1166 [3d Dept 2020]). "In conducting a best interests analysis, courts must consider a variety of factors, including the quality of the parents' respective home environments, the need for stability in the child's life, each parent's willingness to promote a positive relationship between the child and the other parent and each parent's past performance, relative fitness and ability to provide for the child's intellectual and emotional development and overall well-being" (Matter of Christopher L. v Paula L., 212 AD3d 1060, 1061 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Brett J. v Julie K., 209 AD3d 1141, 1143 [3d Dept 2022]). "Family Court's credibility assessments and factual findings will not be disturbed as long as they have a sound and substantial basis in the record" (Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1103 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Zachary C. v Janaye D., 199 AD3d 1267, 1268 [3d Dept 2021]).[FN3]
The record reveals that the child had resided with the grandmother for approximately half of her life. The mother and the father resided together in Niagara Falls when the child was born in 2013 but separated soon after. The mother went to live in Buffalo with the child, and, a few months later, she and the child relocated to Schuyler County. The child was removed from the mother's care in April 2016 and placed with the grandmother in Buffalo. The child continued in the grandmother's care until March 2019, when she returned to the mother's legal custody pursuant to the 2019 order. After being removed from the mother's care in November 2020, the child returned to the grandmother's home in Buffalo.[FN4] During the child's removal, the mother relocated to a new school district within Schuyler County, and the child began residing with her again in July 2021. There, the child resided with the mother, the half brother and the half sister, and the child's three other maternal half siblings visited often.
Further, the record establishes that the father was largely absent from the child's early life, having only sporadic visits with her when the child was present in Buffalo. About a year before the hearing, the father had gotten married, and he resided in a home owned by his wife with their infant child, the father's teenage son and the wife's teenage son. The father also had three other children who would visit every other weekend. Although the father had various physical and mental health ailments resulting from his time in the military, he [*3]had taken steps to manage the various conditions.
The testimony revealed that the mother also dealt with various mental health issues, including attention deficit hyperactivity disorder (hereinafter ADHD), and that she was engaged in mental health counseling and medication management. However, the mother struggled with acknowledging her substance abuse issues during the hearing. She testified that she had only used methamphetamine twice in her life, on those two occasions when the child was removed from her care. But at the same time, the mother posed alternative theories for having tested positive for methamphetamine; according to the mother, the 2016 result was caused by combining her ADHD medication with medication to treat a sinus infection, while the 2020 result was caused by her inhaling fumes while cutting the child's ADHD medication.
Further, the mother acknowledged that both removals were caused by similar conduct — drug use by her and the boyfriend — and she ignored DSS's advice following the first removal to keep the boyfriend away from the children. She explained that she continued to allow him around the children because he was good with them, and because there was no order of protection. Yet, the mother admitted that, a week before the hearing — and despite the existence of an order of protection directing her to keep the boyfriend away from the half sister — she took that child to the home of the boyfriend's sister and allowed the boyfriend to have contact with her. When confronted by a DSS caseworker, the mother denied such contact and told a story that involved her using two cell phones at once, while driving, with the half sister in the vehicle. The mother also admitted that, despite the boyfriend's refusal to engage in recommended substance abuse and mental health treatment, she had an active application seeking to allow him contact with the children and modifying the order of protection requiring her to keep him away from the three children.
Family Court's determination that the father is better positioned to provide the child with stability and to safeguard her overall well-being is supported by a sound and substantial basis in the record. Although the mother expressed love for the child, she demonstrated an unwillingness to acknowledge the boyfriend's substance abuse issues and an inability to place the child's well-being above her own interest in remaining with the boyfriend (see Matter of Amanda YY. v Faisal ZZ., 198 AD3d 1125, 1127-1128 [3d Dept 2021], lv denied 38 NY3d 908 [2022]; Matter of Wood v Wood, 8 AD3d 767, 768 [3d Dept 2004]; see also Matter of Lori MM. v Amanda NN., 75 AD3d 774, 776 [3d Dept 2010]). Her lack of candor and inability to accept responsibility for her own parental failings heightened such concerns. Deferring to Family Court's credibility determinations, we find no basis to disturb its order of custody and parenting time.[FN5] The mother's remaining contentions, to the extent not expressly addressed [*4]herein, lack merit.
Garry, P.J., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Pursuant to the parties' consensus, Family Court did not conduct a Lincoln hearing.

Footnote 2: During the hearing, the attorney for the child supported the child remaining with the mother. However, the appellate attorney for the child supports affirmance of Family Court's order granting the father primary physical custody.

Footnote 3: Contrary to the mother's contention, Family Court did not "constructively vacat[e]" the order on appeal, which the father never moved to vacate. After reviewing the record, we note that Family Court "has broad discretion to establish the parameters of proof and may consider any relevant matter in evaluating a child's best interests" (Matter of Colona v Colona, 125 AD3d 1123, 1125-1126 [3d Dept 2015]; see Matter of Jacob R. v Nadine Q., 141 AD3d 772, 774 [3d Dept 2016]), and that its admission of testimony pertaining to events predating the 2019 order — a significant portion of which was proffered by the mother or elicited by her counsel — provided context to Family Court's best interests inquiry (see e.g. Matter of Schnock v Sexton, 101 AD3d 1437, 1438 [3d Dept 2012]; Matter of Tarrance v Mial, 22 AD3d 965, 966 [3d Dept 2005]; compare Matter of Bowers v Bowers, 101 AD3d 1200, 1201 [3d Dept 2012]).

Footnote 4: The half sister also resided with the grandmother, but the half brother was separated from them, as he was placed with his paternal grandparents.

Footnote 5: Although it is generally preferrable to keep siblings together, such directive is not absolute (see Matter of Terry PP. v Domiyon PP., 184 AD3d 914, 916 [3d Dept 2020]). Further, the child already resided separately from several of her maternal half siblings. In any case, residing primarily with the father will allow the child to further nurture relationships with her paternal half siblings.