■ In the Matter of ANJOULIC J., a Child Alleged to be Permanently Neglected. OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; THERESA J., Appellant. (Proceeding No. 1.) In the Matter of MARIANNE R., Appellant, v OTSEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent. (Proceeding No. 2.) [794 NYS2d 709]—

Crew III, J. Appeals (1) from an order of the Family Court of Otsego County (DiStefano, J.), entered February 10, 2004, which, inter alia, granted petitioner's application, in proceeding No. 1 pursuant to Social Services Law § 384-b, to adjudicate Anjoulic J. a permanently neglected child, and terminated her mother's parental rights, and (2) from two orders of said court, entered December 16, 2003, which dismissed petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of and/or visitation with her grandchildren.

Respondent in proceeding No. 1 (hereinafter the mother) is the biological mother of two children, Ariel (born in 1996) and Anjoulic (born in 2001). Ariel was placed in foster care in October 1997 after she presented at a local hospital with several burns and bruises in various stages of healing, including what appeared to be cigarette burns on her stomach and vagina. Family Court adjudicated Ariel to be permanently neglected in July 2003 and, further, found that it was in Ariel's best interest to terminate the mother's parental rights and free Ariel for adoption. This Court subsequently affirmed that decision (*Matter of Ariel PP.*, 9 AD3d 628 [2004], *lv denied* 3 NY3d 608 [2004]).

Anjoulic was placed in foster care three days following her birth in July 2001 based upon her parents' prior history with regard to their respective remaining offspring and, in November 2002, petitioner in proceeding No. 1, the Otsego County Department of Social Services (hereinafter Department), commenced a permanent neglect proceeding pursuant to Social Services Law § 384-b seeking to terminate the mother's parental rights as to Anjoulic. The matter proceeded to a fact-finding hearing in August 2003, at which time Anjoulic's biological father executed

a judicial surrender forfeiting his parental rights, and the permanent neglect petition against him was dismissed. By reserved decision dated November 24, 2003, Family Court found Anjoulic to be a permanently neglected child and scheduled a dispositional hearing for December 12, 2003.

In the interim, by petition dated October 1, 2003, petitioner in proceeding No. 2 (hereinafter the grandmother) commenced a proceeding pursuant to Family Ct Act article 6 seeking custody of and/or visitation with Ariel and Anjoulic. Following a combined dispositional and custody hearing, at which the grandmother appeared and testified, Family Court, by two orders entered December 16, 2003, dismissed the grandmother's custody/visitation petition as to Ariel and Anjoulic, respectively. Thereafter, by order entered February 10, 2004, Family Court adjudicated Anjoulic to be a permanently neglected child and terminated the mother's parental rights. These appeals by the mother and the grandmother ensued.

We affirm. The mother's primary contention on appeal is that the Department failed to establish by clear and convincing evidence that it exercised diligent efforts to strengthen the relationship between her and Anjoulic and that she, in turn, failed to realistically plan for Anjoulic's future although physically and financially able to do so (see Social Services Law § 384-b [7] [a]; *Matter of Raena TT.*, 7 AD3d 936, 937 [2004]). The mother's challenge in this regard is two-fold: first, that Family Court erred in taking judicial notice of the prior proceedings before it and, second, that the efforts and services provided by the Department were not sufficiently tailored to meet her particular needs. In our view, neither of these contentions has merit.

With regard to the judicial notice issue, the case law makes clear that a court may take judicial notice of its own prior proceedings (see *Matter of A.R.*, 309 AD2d 1153 [2003]; *Matter of Terrance L.*, 276 AD2d 699 [2000], *lv denied* 96 NY2d 703 [2001], *cert denied sub nom. Linares v Suffolk County Dept. of Social Servs.*, 533 US 918 [2001]; CPLR 4511). Here, at the close of the Department's case, counsel for the Department asked that Family Court take judicial notice "of the previous findings of . . . neglect of Anjoulic and the permanent neglect [as] to . . . Ariel." Over the objection of the mother's counsel, Family Court thereafter took judicial notice of the "hearings that have been held to which the party in this case was a party in the past dealing with the same issues, the same testimony, the same type of assistance and treatment," which, in our view, was entirely permissible. Family Court then afforded counsel the opportunity to take a short recess to confer with the mother,

which counsel declined, and the mother thereafter rested her case. Based upon language subsequently utilized by Family Court in its reserved decision and dispositional order,* the mother now argues that Family Court, sua sponte, expanded the scope of the judicially noticed testimony following the conclusion of the fact-finding hearing and, in so doing, ran afoul of this Court's prior decision in *Matter of Justin EE.* (153 AD2d 772, 774 [1989], *lv denied* 75 NY2d 704 [1990]). Assuming, without deciding, that the cited language supports the strained interpretation now urged by the mother, this issue ultimately need not detain us. For the reasons that follow, we conclude that the testimonial and documentary evidence presented on the Department's direct case is more than sufficient to discharge the Department's burden on the permanent neglect petition. Hence, any error that Family Court may have made with regard to the judicially noticed testimony is harmless.

As to the diligent efforts issue, the mother concedes in her brief that the Department provided her with any number of services, including "parent aide services, homemaker services, case management, transportation and mental health counseling" and, to that end, the record reflects that the Department physically had someone in the mother's home providing assistance four out of five weekdays. The mother now argues, however, that because the services provided with regard to Anjoulic essentially were the same services provided with regard to Ariel, and given that her parental rights as to Ariel were terminated, the services provided by the Department were, by necessity, inadequate and, at the end of the day, the Department should have provided additional, or at least different, services to attempt to strengthen her relationship with Anjoulic. We find this argument to be unpersuasive. Simply stated, the record as a whole reflects that the Department provided appropriate services that were tailored to meet the mother's particular needs, and the mere fact that the mother demonstrated the same inattentiveness, lack of focus and inconsistent application of parenting, homemaking and budgeting skills and made the same marginal progress with Anjoulic as she did with Ariel does not demonstrate an inadequacy in the Department's efforts.

Finally, we reject the mother's assertion that she was denied the effective assistance of counsel. Again, the mother's argu-

---

* Family Court stated in such documents, "the Court does take judicial notice of all testimony against [the mother] resulting from prior hearings concerning neglect, extensions of placement, permanency hearings and prior termination of parental rights proceedings on other children involving [the mother]."

ment on this point seems to ignore the reality that the fact-finding hearing as to her then alleged permanent neglect of Anjoulic was conducted only one month after Family Court had adjudicated Ariel to be a permanently neglected child and terminated the mother's parental rights. Given the timing of these events, we are at something of a loss to discern precisely what it was that the mother expected counsel to do in order to obtain a different result here. While one perhaps could take issue with certain of counsel's decisions, it is not the role of this Court to "second-guess the attorney's tactics or strategy" (*Matter of James HH.*, 234 AD2d 783, 785 [1996], *lv denied* 89 NY2d 812 [1997]), and given that counsel cross-examined the Department's witnesses and made appropriate objections, we cannot say that the representation provided to the mother was less than meaningful.

Turning to the grandmother's appeal, Family Ct Act § 262 (a) provides that each of the individuals set forth therein has the right to the assistance of counsel and, further, that "the judge shall advise such person before proceeding that he [or she] has the right to be represented by counsel of his [or her] own choosing, of his [or her] right to have an adjournment to confer with counsel, and of his [or her] right to have counsel assigned by the court in any case where he [or she] is financially unable to obtain the same." As petitioner in proceeding No. 2 and an apparent intervenor in proceeding No. 1, however, the grandmother does not fall into any of the enumerated subdivisions of Family Ct Act § 262 and, hence, did not have a statutory right to counsel or to an adjournment to confer with counsel in the context of her custody/visitation petition. Absent such statutory right, the decision to grant the grandmother an adjournment in order to obtain counsel was a matter committed to Family Court's sound discretion (*see generally Matter of Anthony M.*, 63 NY2d 270, 283 [1984]) and, given the particular facts of this case and the grandmother's extensive prior involvement therewith, we perceive no abuse of that discretion here. The grandmother's remaining contentions, including her assertion that she was denied due process, have been examined and found to be lacking in merit.

Mercure, J.P., Peters, Mugglin and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.