In the Matter of BRITNEY SHIRLEY, Respondent, v TODD SHIRLEY, Appellant. [956 NYS2d 304]—

Egan Jr., J.

We affirm. As the parent seeking to relocate, the mother bore the burden of establishing by a preponderance of the credible evidence that the proposed move was in the children's best interests (*see Matter of Scheffey-Hohle v Durfee*, 90 AD3d 1423, 1425 [2011], *lv denied* 19 NY3d 876 [2012]; *Matter of Sniffen v Weygant*, 81 AD3d 1054, 1055 [2011], *appeals dismissed* 16 NY3d 886 [2011], 17 NY3d 884 [2011]). Such a showing, in turn, requires a court to consider a number of factors, including each parent's "motivation for seeking or opposing the move, the impact of the move on the children's relationship with the noncustodial parent, the feasibility of suitable visitation and the degree to which the move will enhance the children's lives" (*Matter of Pizzo v Pizzo*, 94 AD3d 1351, 1352 [2012]; *see Matter of Tropea v Tropea*, 87 NY2d 727, 740-741 [1996]; *Matter of Smith v Hoover*, 24 AD3d 1096, 1096-1097 [2005]). As Supreme Court was in the best position to evaluate the "testimony, character and sincerity of all the parties involved" (*Eschbach v Eschbach*, 56 NY2d 167, 173 [1982]), its credibility determinations are entitled to deference and its decision, if supported by a sound and substantial basis in the record as a whole, will not be disturbed (*see Matter of Weber v Weber*, 100 AD3d 1244, 1245-1246 [2012]; *Matter of Pizzo v Pizzo*, 94 AD3d at 1352).

Admittedly, the mother's primary motivation for the move was to join her fiancé, but it is readily apparent from the record that the children would benefit from the economic stability and security that such move would bring. At the time of the hearing, the mother was receiving public assistance and routinely had to turn to her relatives, friends and fiancé for additional funds in order to make ends meet. Although the mother sometimes babysat for additional pocket money, the children's needs and schedules effectively precluded outside employment.[3] The mother's fiancé, on the other hand, was gainfully employed as an airframes mechanic for a well-established civilian contractor on the same military base where he previously was stationed. The fiancé testified that he had the financial wherewithal to support the mother and the children, all of whom would be covered under his health insurance once he and the mother married, and that this arrangement would allow the mother to remain at home and continue to work with the children—at least until all of them were in school full time.

As to the impact upon the father's relationship with the children, there is no question that he would see the children less frequently. However, both the mother and the fiancé had extended family in this state and indicated that they would return to the area in order to facilitate the father's visitations with the children. Although the mother wanted the father's visits to remain supervised, she also recognized that such visits necessarily would need to be for longer periods of time. The mother also expressed a willingness to allow the father to visit the children in Arizona, in addition to regular telephone and/or online contact.

While it is true, as the father points out, that the children's educational opportunities in Arizona essentially mirrored those available in New York and that the move indeed would distance the children from their grandparents and other members of their extended families, we nonetheless are persuaded—based upon our review of the record as a whole and having given due consideration to all of the relevant factors, including the feasibility of the father maintaining meaningful contact with the children—that relocation indeed is in the children's best interests (see Matter of Sara ZZ. v Matthew A., 77 AD3d 1059, 1061 [2010]; Matter of Smith v Hoover, 24 AD3d at 1097). Accordingly, we discern no basis upon which to disturb Supreme Court's sound determination in this regard.

---

**3.** All of the children had individualized education plans and previously had received various supportive services, which the mother coordinated, and it was anticipated that one of the twins would need speech and physical therapy going forward.

As to the father's various evidentiary issues, we find them to be lacking in merit. It is well settled that a court may take judicial notice of its own prior proceedings and orders (*see Matter of Anjoulic J.*, 18 AD3d 984, 986 [2005]) and is vested with "broad discretion in determining the parameters for proof to be accepted at the hearing" (*Matter of Scott LL. v Rachel MM.*, 98 AD3d 1197, 1197 [2012] [internal quotation marks and citation omitted]). Moreover, although we are of the view that the limited proof received by Supreme Court with regard to events that predated the prior custody order was properly considered in the context of the best interests analysis (*cf. Matter of Baker v Baker*, 283 AD2d 730, 731 [2001], *lv denied* 96 NY2d 720 [2001]), any error in this regard may be deemed harmless in light of the remaining proof adduced at the hearing (*see generally Matter of Aaron W. v Shannon W.*, 96 AD3d 960, 961 [2012]; *Matter of Anjoulic J.*, 18 AD3d at 987).

Mercure, J.P., Rose, Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, without costs.