Garry, J.
Appeal from two orders of the Family Court of Albany County (Maney, J.), entered February 11, 2013 and June 14, 2013, which granted petitioner’s application, in a proceeding *1002 pursuant to Social Services Law § 384-b, to adjudicate respondent’s children to be permanently neglected, and terminated respondent’s parental rights.
Respondent is the mother of two children (born in 2009 and 2010). The older child was removed from respondent’s custody when she was approximately 10 weeks old, and the younger child was removed immediately after her birth. Both children were placed in petitioner’s custody and later adjudged to be neglected upon respondent’s admissions. In September 2011, petitioner commenced this permanent neglect proceeding. Following fact-finding and dispositional hearings, Family Court found that respondent had permanently neglected the children and that it was in their best interests to terminate respondent’s parental rights and free the children for adoption. Respondent appeals from the fact-finding and dispositional orders.*
As an initial matter, we reject respondent’s contention that Family Court erred by denying her request to require the attorney for the children to cross-examine petitioner’s witnesses before respondent’s cross-examination, or by permitting the attorney for the children to ask leading questions during cross-examination. Both of these claims are premised on respondent’s incorrect view that petitioner’s witnesses effectively became witnesses for the attorney for the children when she agreed with petitioner’s position. The duty of an attorney for the child is to represent the child and advocate for his or her position (see Family Ct Act § 241; Matter of Mark T. v Joyanna U., 64 AD3d 1092, 1093 [2009]). Contrary to respondent’s claim, the fact that here the exercise of this duty resulted in a position similar to that of petitioner did not effectively convert the two parties into one entity. Accordingly, the attorney for the children was entitled to ask leading questions while cross-examining petitioner’s witnesses (see Jerome Prince, Richardson on Evidence § 6-230 at 376 [Farrell 11th ed 1995]). We find no abuse of Family Court’s discretion to “determine the sequence in which the issues shall be tried and otherwise regulate the conduct of the trial” (CPLR 4011; see Feldsherg v Nitschke, 49 NY2d 636, 643 [1980]).
Next, Family Court properly found that petitioner complied with its threshold statutory obligation to exercise diligent efforts to encourage and strengthen the relationship between re *1003 spondent and the children (see Social Services Law § 384-b [7] [a]; Matter of Star Leslie W., 63 NY2d 136, 142 [1984]). Petitioner’s caseworker testified that the obstacles preventing the return of the children were respondent’s mental health issues and limited parenting skills, as well as concerns about domestic violence and unstable housing. As for mental health, following the removal of the older child, petitioner referred respondent — who had previously been diagnosed with bipolar disorder — to a psychologist for an evaluation. The psychologist concluded that she suffered from borderline personality disorder, a condition with symptoms similar to bipolar disorder, and recommended that she receive a form of cognitive therapy known as Dialectical Behavior Therapy. Thereafter, this treatment was provided to respondent. Petitioner further developed a service plan, provided case management, prevention and family services and, when an opening became available, enrolled respondent in a specialized program designed for parents and families affected by mental illness that provided up to 10 hours per week of intensive home-based preventive services. The program’s case planner testified that, after obtaining information on respondent’s mental illness, she adjusted her services to better meet respondent’s needs by such means as maintaining a predictable, routine schedule of home visits, scheduling the visits to facilitate respondent’s therapy appointments and transporting respondent to these appointments. The program’s parent educator consulted a psychologist as well as respondent’s counselor and therapist for guidance on understanding respondent’s needs and diagnosis, and then adapted her services by, among other things, presenting educational material in a concrete fashion. The workers testified that they further adjusted their services to address concerns voiced by respondent by, among other things, consolidating appointments and reducing the number of hours spent on home-based visits when respondent felt overwhelmed, and by honoring her request to conduct educational sessions separately from supervised visits.
As for parenting skills, petitioner engaged respondent in a parenting education curriculum offered through the specialized program that covered such topics as nurturing, empathy, corporal punishment and child development. Petitioner also provided respondent with information on failure to thrive, a condition involving dehydration and weight loss that had affected the older child while she was in respondent’s care and that had led to her hospitalization and removal. Petitioner twice scheduled meetings between respondent and the child’s pediatrician for this purpose and, when respondent failed to attend, arranged a third meeting with a nurse, which respondent at *1004 tended. The case planner and parent educator further provided preventive services addressing domestic violence issues between respondent and the children’s father and the instability of respondent’s housing. Finally, petitioner facilitated regular supervised visitation throughout the period of the children’s removal. Thus, the record supports Family Court’s finding that “petitioner made the requisite diligent efforts that were appropriately tailored to respondent’s [individual] circumstances” (Matter of Samuel DD. [Margaret DD.], 123 AD3d 1159, 1161 [2014]; see Matter of Nicole K. [Melissa K.], 85 AD3d 1231, 1232 [2011]; Matter of Anjoulic J., 18 AD3d 984, 987 [2005]).
We are unpersuaded by respondent’s claim that petitioner did not prove that she failed to plan for the future of her children (see Social Services Law § 384-b [7] [a], [c]). Mere participation in classes and programs is not enough to meet this requirement when a parent does not “benefit from the services offered and utilize the tools or lessons learned in those classes in order to successfully plan for the child’s future” (Matter of Elijah NN., 20 AD3d 728, 730 [2005]; see Matter of Jyashia RR. [John VV.], 92 AD3d 982, 983-984 [2012]; Matter of Willard L., 23 AD3d 964, 965-966 [2005], lv denied 6 NY3d 708 [2006]). Although respondent participated in the home-based parent education program, she canceled many visits, failed to complete homework assignments and made comments to the effect that she did not need to do so because she already possessed the skills in question. As a result of respondent’s failure to engage with the program or improve her parenting skills, the parent educator testified that she did not receive a certificate of completion. Respondent later withdrew from the parenting education aspect of the specialized program; she stated that she would find her own parenting class, but did not do so.
Although respondent attended most of her supervised visits, she was not always attentive to the children and sometimes appeared disinterested in them, staring at the wall during visits, using her phone to send texts, or otherwise failing to engage with the children until workers prompted her to do so. She had difficulty attending to both children at once without reminders and would sometimes fail to respond to the children when they cried. Additionally, at times, she treated the children inappropriately, as in an incident when one of the children did not want to eat and respondent “shov[ed]” a spoon into her mouth. A foster care social worker who monitored the visits testified that over the course of the children’s removal, respondent made “very little” progress in her ability to manage the children or interact appropriately with them.
*1005 As for respondent’s mental health issues, her therapist testified that her attendance at therapy was inconsistent and, at one point, so poor that she was in danger of being discharged. Further, she failed to take her medication as prescribed after allowing her Medicaid coverage to lapse. Although emergency prescription assistance was available, respondent delayed in advising petitioner’s workers of the problem or otherwise seeking help; instead, without medical supervision, she took half the prescribed dosage for a period of several months to make the prescription last longer. In regard to stable housing, respondent obtained housing through a program that required recipients to have income, either through government programs or employment. However, respondent’s continued placement in this program remained in jeopardy because she had no employment income for extended periods and offered only minimal cooperation with a case planner’s efforts to help her obtain public assistance, failing to provide needed documents and missing scheduled meetings. Accordingly, clear and convincing record evidence supports Family Court’s finding that respondent failed to benefit from the services provided to her or address the issues that had resulted in the children’s removal, and therefore failed to plan for their future (see Matter of Jah’Meir G. [Eshale G.], 112 AD3d 1014, 1015-1016 [2013], lv denied 22 NY3d 863 [2014]; Matter of Summer G. [Amy F.] 93 AD3d 959, 961-962 [2012]; Matter of Joseph ZZ., 245 AD2d 881, 883-884 [1997], lv denied 91 NY2d 810 [1998]).
Finally, we reject respondent’s contention that Family Court erred in finding that termination of her parental rights, rather than a suspended judgment, was in the children’s best interests. “The purpose of a suspended judgment is to provide a parent who has been found to have permanently neglected his or her children] with a brief grace period within which to become a fit parent with whom the children] can be safely reunited” (Matter of Clifton ZZ. [Latrice ZZ.], 75 AD3d 683, 683-684 [2010] [internal quotation marks and citations omitted]; accord Matter of Katie I. [Jonathan I.], 116 AD3d 1309, 1310 [2014]). Nothing in the record of the dispositional hearing suggests that providing such a grace period to respondent would lead to her safe reunification with the children or would otherwise be in their best interests. The testimony established that by the time of the hearing, respondent had lost her apartment, had been living with a friend and in homeless shelters, and had failed to keep petitioner advised of her whereabouts. Due to her moves, she had been discharged from the program that had been providing her mental health services, and she had not yet obtained treatment in her new location. She had likewise been discharged *1006 from prevention services and was not participating in any new program.
At the time of the dispositional hearing, the children were residing together in a preadoptive foster home where they had spent almost all of their lives. Viewing the record as a whole and according the appropriate deference to Family Court’s factual assessments and choice among dispositional alternatives, we find a sound and substantial basis for its determination that termination of respondent’s parental rights was in their best interests (see Matter of Kayden E. [Luis E.], 111 AD3d 1094, 1098 [2013], lv denied 22 NY3d 862 [2014]; Matter of Kellcie NN. [Sarah NN.] 85 AD3d 1251, 1252-1253 [2011]; Matter of Angelica VV., 53 AD3d 732, 733 [2008]).
McCarthy, J.E, Lynch, Devine and Clark, JJ., concur.
Ordered that the appeal from the order entered February 11, 2013 is dismissed, without costs. Ordered that the order entered June 14, 2013 is affirmed, without costs.

 No appeal as of right lies from a fact-finding order in a permanent neglect proceeding, so respondent’s appeal from that order must be dismissed; however, her appeal from the dispositional order brings the fact-finding order up for review (see Matter of Michael JJ. [Gerald JJ.], 101 AD3d 1288, 1289 n 1 [2012], lv denied 20 NY3d 860 [2013]).