Cyprium Therapeutics, Inc. v Curia Global, Inc. (2024 NY Slip Op 51698(U))

[*1]

Cyprium Therapeutics, Inc. v Curia Global, Inc.

2024 NY Slip Op 51698(U)

Decided on December 11, 2024

Supreme Court, Albany County

Platkin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 11, 2024
Supreme Court, Albany County

Cyprium Therapeutics, Inc., Petitioner,

against
Curia Global, Inc., Respondent.

Index No. 905902-22

DLA Piper LLP (US)
Attorneys for Petitioner
(Brett Ingerman, of counsel)
650 S. Exeter Street, Suite 1100
Baltimore, Maryland 21202
—and—
(Steven M. Rosato, of counsel)
1251 Avenue of the Americas
New York, New York 10020
Nixon Peabody LLP
Attorneys for Respondent
(Daniel J. Hurteau, of counsel)
677 Broadway, 10th Floor
Albany, New York 12207
Vedder Price P.C.
Co-Attorneys for Respondent
(Richard H. Tilghman, of counsel)
222 North LaSalle Street
Chicago, Illinois 60601

Richard Platkin, J.

Petitioner Cyprium Therapeutics, Inc. ("Cyprium") brought this special proceeding under CPLR 7502 (c), seeking a preliminary injunction in aid of arbitration against respondent Curia Global, Inc. ("Curia"). The Court granted an injunction on September 12, 2022, and the arbitration concluded with an award in Curia's favor on March 8, 2024.
Curia moves by Order to Show Cause dated August 6, 2024, "pursuant to CPLR §§ 6315 and 7511 and 22 NYCRR 130-1.1," for an order directing payment of the undertaking posted by Cyprium, along with monetary sanctions under Part 130 (NYSCEF Doc No. 154). 
Cyprium opposes the motion and cross-moves under CPLR 6315 for an order "discharging the undertaking in the amount of $934,400 posted . . . on December 21, 2022" (NYSCEF Doc No. 157). 
BACKGROUND
A. Injunction Proceedings
Cyprium commenced this special proceeding on August 4, 2022 for a preliminary injunction in aid of an anticipated arbitration challenging Curia's purported termination of a master services agreement. 
"Cyprium is a biotechnology company that develops novel therapies for Menkes disease" (NYSCEF Doc No. 1 ["Petition"], ¶ 36), a rare but severe childhood illness for which there is no treatment approved by the U.S. Food and Drug Administration ("FDA") (see id., ¶ 6). The injectable drug that Cyprium sought to bring to market, Copper Histidinate, was shown to increase patients' average life expectancy from 16 months to nearly 15 years (see id., ¶¶ 6-7). 
Cyprium engaged Curia, a "global contract research, development and manufacturing organization that assists biotechnology companies in the development and manufacturing of drug therapies" (id., ¶ 37), to produce the drug for clinical trials. Following successful trials, Cyprium began preparing a new drug application for the FDA's approval. The parties anticipated that Curia would serve as the commercial manufacturer of the drug, and Curia began upgrading its production facility in preparation for the work.
Pursuant to a master services agreement dated December 9, 2021 (see Petition, Ex. 1 ["MSA"]) and two work orders dated February 23, 2022 (see id., Exs. 2-3 ["Work Orders"]), Curia agreed to manufacture two batches of the drug for Cyprium to confirm that the upgrades and modifications to the production facility had not affected the quality of the finished product.
The MSA required Cyprium to make an upfront payment of 30% of the overall value of the Work Orders (see MSA, ¶ 6 [b]; Work Orders, § 7.2) and to "pay each invoice . . . within thirty (30) days of the date such invoice is sent" (MSA, ¶ 6 [c]). However, "[i]f any portion of an invoice is disputed in good faith, [Cyprium] will pay the undisputed amounts and promptly notify Curia in writing of the nature of the dispute, whereupon the parties will use good faith efforts to reconcile the disputed amount as soon as practicable" (id.).
On April 7, 2022, Curia invoiced Cyprium for the Work Orders, calling for payment by May 7, 2022 (see NYSCEF Doc Nos. 25-26 ["Invoices"]). However, disagreements between the parties arose concerning production delays, quality assurance issues, the proposed testing regime and the overarching question of whether Curia would be manufacturing "commercial" batches of the Product, as requested by Cyprium, or producing clinical batches "using commercial production standards," as Curia insisted (Petition, ¶ 54).
At Cyprium's request, a teleconference was held on April 29, 2022. According to Cyprium, no one from Curia "could provide a meaningful explanation for the delays" or for [*2]Curia's position that it was not obliged to test the confirmation batches in accordance with FDA regulations (id., ¶ 61). "Given Curia's apparent inability and unwillingness to deliver the manufacturing services that it promised under the February 23 Work Orders, Cyprium made clear during the April 29th teleconference that no payment on the Disputed Invoices would be forthcoming until the parties' issues were resolved" (id., ¶ 62).
"Curia concluded the [call] by assuring Cyprium that it would meet internally to discuss the disputes and would be in touch shortly with a proposed solution. Instead, the next communication that the parties had regarding this ongoing dispute was Curia's June 9, 2022 Termination Letter" (id., ¶ 63), which stated that Curia was terminating the MSA on account of two material breaches by Cyprium: (1) failure to pay the Invoices, and (2) unauthorized regulatory communications with the FDA (see NYSCEF Doc No. 27).
Cyprium demanded that Curia rescind the termination and continue performing under the MSA (see NYSCEF Doc No. 37), but Curia refused. Cyprium then commenced this special proceeding for a preliminary injunction obliging Curia to continue performing under the MSA during the pendency of anticipated arbitration (see NYSCEF Doc No. 12).
In maintaining that Cyprium was unlikely to prevail in arbitration on its claim that the MSA was wrongfully terminated for non-payment, Curia argued that Cyprium did not object to the Invoices when presented, and it heard nothing from Cyprium about the Invoices until after the Termination Letter. And despite detailed meeting minutes and project notes, there was no record of Cyprium raising a payment dispute or even referring to the Invoices during the April 29, 2022 teleconference.
In a Decision & Order dated September 12, 2022 ("PI Decision"), the Court granted an injunction restraining Curia from terminating the MSA during the pendency of the arbitration (see 81 Misc 3d 1238[A], 2022 NY Slip Op 51426[U] [Sup Ct, Albany County 2022]).
In finding that Cyprium had demonstrated a sufficient likelihood of success in arbitration, the Court relied upon the sworn statements of Cyprium's Petition, as verified by Dr. Lung Yam, the company's chief executive officer:
18. Cyprium made clear during [the April 29, 2022] teleconference that no payment on the April 7, 2022 invoices would be forthcoming until the issues that apparently were preventing Curia from doing the work that it promised to [do] were resolved (the "Disputed Invoices"). In other words, the very nature of the work that Curia was to perform was in dispute between the parties (notwithstanding the fact that Curia had no good-faith basis for its position). Curia thus was explicitly on notice that Cyprium would not be making any payments on the Disputed Invoices unless and until Curia could show that it was able to discharge its obligations under the February 23 Work Orders (Petition, ¶ 18 [emphasis added]).
* * *
62. Given Curia's apparent inability and unwillingness to deliver the manufacturing services that it promised under the February 23 Work Orders, Cyprium made clear during the April 29th teleconference that no payment on the Disputed Invoices would be forthcoming until the parties' issues were resolved. Thus, by no later than April 29, 2022, Curia had actual notice that the amounts claimed to be due under the Disputed Invoices were in dispute (a dispute playing out before Curia's very eyes, and one that it acknowledged over email) (id., ¶ 62 [emphasis added]).
Curia responded to Dr. Yam's sworn allegations with detailed affidavits from two of its [*3]executives who participated in the April 29, 2022 teleconference. Both executives attested that "at no time during that discussion did Cyprium claim that it was disputing" the Invoices (NYSCEF Doc No. 15, ¶ 27). "If Cyprium had said anything to indicate that it was disputing Curia's right to payment, Curia would have needed to regroup internally and decide whether to proceed . . . while an invoice dispute was percolating" (id.; see also NYSCEF Doc No. 18, ¶ 24).Notwithstanding the absence of any "writing that dispute[d] the Invoices," the Court found that Cyprium had demonstrated a "fair, but not overwhelming, likelihood of prevailing before the arbitrator on its challenge to Curia's termination of the MSA for non-payment of the Invoices" (2022 NY Slip Op 51426[U], *12). The Court relied primarily on the "sharp factual dispute" as to notice, reasoning that the "averments of the Petition support[ed] a finding of oral or actual notice (see Petition, ¶¶ 18, 62), whereas the affidavits submitted by two of Curia's executives present[ed] an entirely different version of events" (id. [citation omitted]).
Curia's version of events appears to be more plausible, given the absence of any meeting minutes, notes, emails or letters memorializing or responding to the assertion of a payment dispute by Cyprium. On the other hand, the April 29, 2022 teleconference occurred at a time when the parties were bogged down in disputes concerning production delays, disputes concerning quality issues, disputes over testing requirements, and the over-arching dispute over confirmation/commercial batches. It certainly is not implausible or unreasonable to believe that Cyprium indicated during the teleconference that payment on the Invoices would not be forthcoming until there was a path forward on the Work Orders, even if financial issues were not the focus of the teleconference (id.).
The Court subsequently fixed "an undertaking of $934,400," representing "the cost of manufacturing two confirmation batches of the [drug] to commercial production standards" (NYSCEF Doc No. 120 at 3-4), which Cyprium posted on December 21, 2022 (see NYSCEF Doc No. 126).
B. The Arbitration
Following a seven-day evidentiary hearing and extensive briefing and argument, the arbitrator (James R. Ferguson ["Arbitrator"]) issued a Final Award in Curia's favor on March 8, 2024 (see NYSCEF Doc No. 141 ["Award"]). After determining that Curia had not demonstrated a material breach of the MSA in regard to Cyprium's regulatory communications with the FDA, the Arbitrator found that Curia properly terminated the MSA for non-payment.
The "critical issue" was whether "Cyprium gave Curia 'actual notice' of the disputed invoices" (id. at 17), and the Arbitrator relied on "three undisputed facts" in finding the absence of proper notice:
First, Cyprium acknowledges that it never provided Curia with any written notice disputing the April Invoices or disclosing the "nature" of the underlying dispute. Instead, Cyprium relies primarily on oral statements made by its General Counsel during the April 29 call.
Second, Cyprium acknowledges that [its] General Counsel made no express reference in his April 29 comments to the April Invoices. Instead, he made only the broad statement that "[u]ntil we can figure out these issues, resolve these disputes, everything's going to stop." Cyprium argues that this statement necessarily implied that Cyprium would not pay the April Invoices until the Parties had resolved their disputes.
Third, Cyprium acknowledges that neither party has produced any internal documents [*4]reflecting or memorializing the fact of a disputed payment. While a disputed payment would presumably lead to internal discussions on both sides, the evidence here discloses no contemporaneous emails, notes, meeting minutes, memoranda or other documents reflecting such discussions (id. at 17-18 [citations omitted]).
"Cyprium base[d] its entire 'actual notice' argument on a single remark that (1) occurred during [the April 29, 2022] contentious conference call; and (2) did not expressly refer to the April Invoices," arguing unpersuasively that Curia "must have . . . 'interpreted' . . . the 'stop everything' comment to convey Cyprium's intention to dispute the invoices" (id. at 18 [citations omitted]).
The Arbitrator further emphasized that Cyprium's notice argument "depart[ed] substantially" from the arguments and representations made to this Court in the Petition:
At that time, Cyprium asserted that during the April 29 call Cyprium made clear that 'no payment on the Disputed Invoices would be forthcoming until the parties issues were resolved'" ([Petition], ¶¶ 18, 62) (emphasis added). [Supreme Court] relied on this assertion in finding that Cyprium had a "fair, but not overwhelming" likelihood of prevailing in its challenge to the "unpaid invoices" grounds for the termination decision. Cyprium now acknowledges that the claim was incorrect (Award at 18 n 5 [citations omitted]).
In fact, Cyprium's opening statement to the Arbitrator acknowledged that the Invoices were not discussed during the April 29, 2022 teleconference: "We did not talk about invoices on this call. That is an undisputed fact in this case" (NYSCEF Doc No. 142 ["Arb. Tr."] at 68-69).
Further, Dr. Yam testified that he did not recall anyone from Cyprium stating during the April 29, 2022 teleconference that "we're not going to pay the invoices until these disputes are resolved or words to that effect" (id. at 1032-1033; see also id. at 1078-1079). When asked specifically about paragraphs 18 and 62 of the Petition, Dr. Yam admitted that his sworn statements were "not true," explaining that "[the Petition] was prepared by lawyers," and the language in question was "put there by [Cyprium's] attorneys" (id. at 1086-1087, 1089). Dr. Yam further testified that while the statements "may not be accurate," he did not "purpose[fully] lie" (id. at 1090-1091; see Award at 18 n 5).
In the absence of any New York precedent for finding "actual notice based on . . . a single oral remark that makes no mention of the required information ([i.e.] the disputed invoices)" (Award at 19), the Arbitrator determined that Curia properly terminated the MSA and dismissed Cyprium's counterclaims for, among other things, permanent injunction (id. at 24-31). C. The Instant Motions
Curia moves for an order confirming the Award, directing payment of the Undertaking and imposing sanctions, claiming that such relief is needed "to hold Cyprium accountable for its deliberate obfuscation and to recover Curia's resulting losses" (NYSCEF Doc No. 153 ["MOL"] at 1). Curia argues that its "request is well-supported by New York law. Whether under the undertaking provisions of [CPLR 6315] or the sanctions provisions of [22 NYCRR 130-1.1], Curia must be awarded the out-of-pocket costs and attorneys' fees incurred to defend and eventually overcome the wrongful injunction Cyprium obtained through false and misleading statements made to this Court" (id.).
Cyprium does not object to confirmation, but it opposes the balance of the motion. It also cross-moves under CPLR 6315 to discharge the Undertaking.
ANALYSIS
[*5]A. Undertaking
1. Right of Recovery
Upon a grant of a preliminary injunction, "the plaintiff shall give an undertaking in an amount to be fixed by the court, that the plaintiff, if it is finally determined that [it] was not entitled to an injunction, will pay to the defendant all damages and costs which may be sustained by reason of the injunction" (CPLR 6312 [b]). Cyprium posted an undertaking of $934,400 ("Undertaking") to support the preliminary injunction.
Curia argues that it is entitled to recover damages from the Undertaking "[b]ecause the arbitrator considered the questions evaluated by the Court and finally determined that Cyprium was not entitled to a permanent injunction and that Curia properly terminated the MSA and Work Orders" (MOL at 10).
Cyprium responds that Curia's argument "skips any discussion of the necessary legal predicate . . . that there must have been a 'final' determination that Cyprium 'was not entitled to an injunction'" (NYSCEF Doc No. 158 ["Opp Mem"] at 14, quoting CPLR 6312 [b]). Curia's right to recovery "'depends on whether [Cyprium] was entitled to the preliminary injunction, not on whether [Curia] eventually prevail[ed] on the merits'" (id. at 14-15, quoting Margolies v Encounter, Inc., 42 NY2d 475, 479 [1977]). "As there has been no ruling 'that a preliminary injunction should have never been issued[,]' Curia is missing a 'statutory predicate for recovery of the damages' that it claims to have suffered" (id. at 15-16, quoting Margolies, 42 NY2d at 481).
Curia counters that Cyprium's argument is based on misapprehension of the law. Curia relies principally upon J.A. Preston Corp. v Fabrication Enters. (68 NY2d 397 [1986]), a decision of the Court of Appeals that confined Margolies to its facts. Curia maintains that the Award is a final determination establishing that Cyprium was not entitled to a preliminary injunction (see NYSCEF Doc No. 168 ["Reply MOL"] at 7).
In Margolies, the preliminary injunction was reversed on appeal for lack of irreparable harm, and plaintiffs discontinued the action before defendants could obtain a final adjudication of the merits. Defendants then sought damages from the undertaking, which plaintiffs opposed on the ground "that the contingency referred to [in CPLR 6312 (b)] is a determination that [plaintiffs] are not entitled to prevail in the final outcome of the action itself" (42 NY2d at 478). The Court of Appeals rejected that view, reasoning that CPLR 6312 (b) "refers to a final determination that the plaintiffs were not entitled to the preliminary injunction, rather than a determination with respect to their right to a permanent injunction or other favorable outcome on the merits" (id. at 478-479). "The proper focus is on the propriety of the . . . preliminary injunction when it was granted" (id. at 479).
The Court of Appeals returned to CPLR 6312 (b) in J.A. Preston, a case involving an application to discharge an undertaking after plaintiffs' preliminary injunction was affirmed on appeal (see 68 NY2d at 400-401). In rejecting plaintiffs' contention that the affirmance of the preliminary injunction was "a final determination that [it] was properly granted," the Court of Appeals emphasized that CPLR 6312 (b) "is concerned . . . with a final determination of rights between the parties" (id. at 404 [emphasis added]). Marshalling more than a century of appellate precedent, the Court of Appeals laid out the following principles:
[W]hen defendant consents to the discontinuance of the action without reserving [its] rights on the undertaking, there can be no recovery on the bond because there can be no such final determination, but when, without defendant's consent, plaintiff discontinues [*6]the action [plaintiff's] doing so is equivalent to a determination that [it] was not entitled to the injunction and permits defendant to recover on the bond. So also when there is a dismissal for failure to state a cause of action, there is a final determination within the meaning of the provision in question, but when dismissal occurs for a reason arising subsequent to the grant of the injunction but not going to the merits there is not. In the latter case, however, a determination of the merits may thereafter be obtained by either party in order to settle the respective rights on the undertaking (id. [internal citations omitted]).
"That there was no error in the grant of a preliminary injunction in terms of its initial issuance, of course, does not mean that it cannot or will not ultimately be found to have been erroneously granted" (id. at 405). "[A] preliminary injunction . . . depends upon probabilities, any or all of which may be disproven when the action is tried on the merits, and the affirmance of an order granting a preliminary injunction determines no more than that the discretion exercised in favor of granting the order was not based upon a demonstration of those probabilities so insufficient as to constitute an abuse of discretion" (id. at 406).
"In short, the Appellate Division's [affirmance], though final in the sense that it could not be further appealed, determined only that plaintiffs had made a sufficient showing to warrant provisional relief but did not foreclose the possibility that it would be finally determined that plaintiffs were 'not entitled to an injunction'" (id.).
Recognizing the considerable tension with Margolies, decided just nine years earlier, the Court of Appeals confined the earlier precedent to its "particular facts" (id. at 407), which involved the reversal of a preliminary injunction that should never have been issued (due to the absence of irreparable harm), coupled with a voluntary discontinuance that denied to the restrained party the opportunity to obtain a favorable final adjudication (see id. at 407-408).
The principal decision of the Appellate Division, Third Department is Bonded Concrete, Inc. v Town of Saugerties (42 AD3d 852 [3d Dept 2007]), a case in which the Third Department had "twice determined" on interlocutory appeals that "the initial issuance of the preliminary injunction" was proper, but the restrained plaintiff ultimately prevailed (id. at 855).
In concluding that there had been "a final determination that [defendants] were not entitled to the injunctive relief," the Third Department relied upon the "affirmed award of summary judgment to plaintiff[] and [favorable] declaration [of rights], and concomitant disposition of all remaining claims and counterclaims [by defendants]" (id.). "[T]he final determination contemplated by CPLR 6312 (b)" is "an ultimate determination on the merits of whether the injunction was erroneously granted and should, at that later date, be vacated" (id. at 855-856).
Applying the foregoing principles and precedents, the Court is satisfied that Curia is entitled to pursue damages from the Undertaking under CPLR 6312 (b) and 6315. The Award is a final determination that conclusively establishes Cyprium's breach of the MSA for non-payment of the Invoices and denies any relief to Cyprium, including the requested permanent injunction (see Award at 24, 29-30). Further, the preliminary injunction hinged on precisely the same factual issue that was pivotal to the Arbitrator's denial of relief to Cyprium (see Sunrise Plaza Assoc. v International Summit Equities Corp., 212 AD2d 690, 691 [2d Dept 1995]; cf. Gold Coast Enters. Ltd. v Four Seasons Mktg. Corp., 19 Misc 3d 1112[A], 2008 NY Slip Op 50651[U], *2-3 [Sup Ct, Nassau County 2008]).
The Court therefore concludes that the Award is an "ultimate determination on the [*7]merits" that "the injunction was erroneously granted and should . . . be vacated" (Bonded Concrete, 42 AD3d at 856; see J.A. Preston, 68 NY2d at 405-406).
As to Cyprium's reliance on Margolies, the Court recognizes that no appeal was taken from the preliminary injunction, and "there has been no ruling 'that a preliminary injunction should have never been issued'" (Opp Mem at 15-16, quoting Margolies, 42 NY2d at 481).[FN1]
But with the benefit of the Award, which is the "final determination" of the merits of the parties' disputes, it is apparent "that there was no predicate for issuance of the preliminary [injunction] . . . the first place" (Gold Coast, 2008 NY Slip Op 50651[U], *2 [internal quotation marks omitted]; see Margolies, 42 NY2d at 481 ["In many, even most, instances the entitlement to the preliminary injunction will parallel the plaintiff's right to a permanent injunction . . . ."]).
Dr. Yam admitted to the Arbitrator that paragraphs 18 and 62 of the Petition were "not true" (Arb. Tr. at 1086-1087), and there had been no discussion of the Invoices or payment during the April 29, 2022 teleconference (see id. at 1032-1033, 1078-1079). At most, Cyprium's general counsel told Curia that "'everything stops'" until the non-financial issues were resolved (Award at 21, quoting Arb. Tr. at 1106). And, of course, "nothing stopped" after the teleconference.
Further, the sworn allegations of paragraphs 18 and 62 of the Petition were highly material to issuance of the preliminary injunction. As stated in the PI Decision, these attestations were the basis for the Court finding a "sharp factual dispute as to . . . notice," which, in turn, served as a predicate for the determination "that Cyprium ha[d] demonstrated a fair, but not overwhelming, likelihood of prevailing before the arbitrator" (2022 NY Slip Op 51426[U], *12). "The averments of the Petition support[ed] a finding of oral or actual notice (see Petition, ¶¶ 18, 62), whereas the affidavits submitted by two of Curia's executives present[ed] an entirely different version of events (see Parikh Aff., ¶ 27; Finnley Aff., ¶ 24)" (id.).
Based on the foregoing, the Court concludes that Cyprium was not entitled to a preliminary injunction, and Curia may recover from the Undertaking "all damages and costs which may be sustained by reason" thereof (CPLR 6312 [b]; see Matter of Citizens for St. Patrick's v City of Watervliet Zoning Bd. of Appeals, 130 AD3d 1338, 1339 [3d Dept 2015], lv dismissed 27 NY3d 1059 [2016]).
2. Damages
Curia seeks to recover the attorney's fees and out-of-pocket costs incurred in complying with the PI Order ($64,899.64), arbitrating with Cyprium ($2,034,278.70) and pursuing the instant application for damages and dissolution of the injunction ($71,350.50) (see NYSCEF Doc No. 137 ["Tilghman Aff."], ¶ 64 [2]; MOL at 15; NYSCEF Doc No. 169, ¶ 5).[FN2]

Compliance with PI Order. Curia requests $43,581.50 in attorney's fees and $21,318.14 [*8]in out-of-pocket costs incurred in complying with the PI Order (see Tilghman Aff., ¶¶ 51 [b]; 64 [2] [a]). The request encompasses Curia's legal costs attendant to the PI Order, including counsel's involvement in a new payment dispute with Cyprium (see NYSCEF Doc No. 149 ["Phillips Aff."], ¶ 12; Tilghman Aff., ¶ 40), as well as the costs associated with a mock pre-approval inspection of the manufacturing facility and other regulatory-related expenses (see Phillips Aff., ¶¶ 3-5, 7-9, 15-18).
The PI Order obliged Curia, a highly-regulated entity, to continue doing business with a difficult customer who did not pay its bills on time in an adversarial environment that necessitated the continual involvement of counsel. Under the circumstances, the Court is satisfied that the $64,899.64 in fees and costs requested by Curia were sustained by reason of the preliminary injunction enjoining Curia's termination of the MSA, and such costs were not included or accounted for in the Work Orders (see id., ¶¶ 19, 29; see also MOL at 16).
The Arbitration. Curia seeks to recover $1,314,926.25 in attorney's fees and $719,352.45 in out-of-pocket costs incurred in arbitrating against Cyprium. Curia asserts that it is entitled to recover these fees and costs "[b]ecause the arbitration hearing was necessary to unwind the injunction and the issues litigated in the arbitration were 'inseparable' from the issues litigated in the injunction proceedings" (MOL at 12; see Tilghman Aff., ¶¶ 51 [c]; 64 [2] [b]). Curia further argues that the PI Order had the effect of prolonging the arbitration and making it more expensive (see MOL at 13-14). 
The Court declines to award Curia any portion of the attorney's fees or out-of-pocket expenses incurred in the arbitral process. Curia itself initiated the arbitration prior to the Court's issuance of the PI Order (see NYSCEF Doc No. 160), and Curia would have incurred the expenses of arbitrating with Cyprium regardless of the preliminary injunction. Further, Curia's reliance on cases where "trial was the only means by which defendant was able to remedy the injunction" (Republic of Croatia v Trustee of Marquess of Northampton 1987 Settlement, 232 AD2d 216, 216 [1st Dept 1996]) is unavailing, as the PI Order merely maintained the status quo pending the conclusion of an arbitral process to which Curia was contractually bound.
Moreover, Curia's claim that the PI Order denied it an early disposition of the arbitration in its favor, "either through a bifurcated hearing process or through a request for dispositive relief" (MOL at 13), is highly speculative,[FN3]
and, in any event, implicates matters within the exclusive province of the Arbitrator (see id. at n 6; AAA Commercial Arbitration Rule 34 [a]). Moreover, Curia had an opportunity to seek sanctions or other relief before the Arbitrator but did not do so (see AAA Commercial Arbitration Rule 60; NYSCEF Doc No. 159, ¶¶ 8-9; see also Reply MOL at 12 [Curia is not (and cannot be) seeking sanctions "based on misconduct before the arbitrator"]).
This Application. Curia seeks to recover a total of $71,350.50 in counsel fees and costs incurred in pursuing damages from the PI Order and in moving to dissolve the injunction (see [*9]Tilghman Aff., ¶¶ 51 [d]; 64 [2] [c]; MOL at 16; NYSCEF Doc No. 169, ¶ 5). The Court finds such an award to be warranted (see Bausch & Lomb Inc. v Hydron Pac., 82 Misc 2d 576, 579 [Sup Ct, Monroe County 1975]; see also Citizens for St. Patrick's, 130 AD3d at 1340).
Based on the foregoing, Curia shall recover the sum of $136,250 against Cyprium from the Undertaking.[FN4]

B. Sanctions
Curia moves, in the alternative, to recover its "out-of-pocket costs and attorneys' fees" under "the sanctions provisions of [22 NYCRR 130-1.1]" (MOL at 1). Specifically, Curia seeks to recover, in the form of compensatory sanctions, the attorneys' fees and costs incurred in (i) defending against Cyprium's application for a preliminary injunction, (ii) implementing the preliminary injunction, (iii) arbitrating with Cyprium and (iv) the instant motion practice.
In seeking sanctions of more than $2 million, Curia relies on the language of Part 130 authorizing a court, in its discretion, to "award to any party or attorney in any civil action or proceeding . . . costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct" (22 NYCRR 130-1.1 [a]).
Even assuming, however, that Cyprium engaged in frivolous conduct within the meaning of Part 130 by asserting materially false allegations of fact in the Petition (see id. [c] [3]), the damages sought by Curia in categories (ii) and (iv) already have been awarded from the Undertaking (cf. Citizens for St. Patrick's, 130 AD3d at 1340), and the damages sought in category (iii) are denied for essentially the reasons stated in Part A.2, supra.
That leaves Curia's request for $143,877.50 in legal fees and costs incurred in defending against Cyprium's preliminary injunction motion (see Tilghman Aff., ¶¶ 51 [a]; 64 [3]; NYSCEF Doc No. 145 [yellow highlights]). The Court finds that such fees and costs are not recoverable under Part 130 as "reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct" (22 NYCRR 130-1.1 [a]). There is no reason to believe that all (or even most) of Curia's costs of defending against the injunction application flowed from the representations made in paragraphs 18 and 62 of the Petition, and Curia has not specifically identified any defense costs that would have been avoided had the notice issue been presented to the Court in a manner consistent with the presentation made to the Arbitrator.[FN5]

Accordingly, in the exercise of discretion, the branch of the motion seeking sanctions under Part 130 is denied.[FN6]

C. Confirmation
Inasmuch as the arbitration has concluded, Curia's unopposed request to confirm the Award and dissolve the preliminary injunction should be granted.
CONCLUSION
Based on the foregoing, it is
ORDERED and ADJUDGED that the Award is confirmed; and it is further
ORDERED that the preliminary injunction issued by this Court on September 12, 2022 is dissolved; and it is further
ORDERED and ADJUDGED that Curia shall recover from Cyprium the sum of $136,250 in attorney's fees and out-of-pocket costs from the undertaking of $934,400 posted by Cyprium on December 21, 2022; and it is further
ORDERED that, upon the payment to Curia of such sum, the balance of the undertaking shall be discharged; and finally it is
ORDERED that Curia's motion and Cyprium's cross motion are decided and determined in accordance with the foregoing, and any relief not expressly granted herein is denied.
This constitutes the Decision, Order & Judgment of the Court, the original of which is being uploaded to NYSCEF for entry by the Albany County Clerk. Upon such entry, counsel for Curia shall promptly serve notice of entry on all parties entitled thereto.
Dated: December 11, 2024
Albany, New York
RICHARD PLATKIN
A.J.S.C.
Papers Considered:
NYSCEF Doc Nos. 137-154, 157-173.[FN7]

Footnotes

Footnote 1:The Arbitrator did not (and could not) review the Court's grant of the preliminary injunction, notwithstanding his recognition that "Cyprium depart[ed] substantially from the argument it [previously] made" to obtain the injunction (Award at 18 at 5). And Curia acknowledges that the "Court's PI Order reflected a reasoned application of law, awarded Cyprium only partial relief, and identified sharp factual disputes" (MOL at 13).

Footnote 2:Curia also seeks to recover its fees and costs in defending against Cyprium's application for a preliminary injunction ($143,877.50) in the form of monetary sanctions under Part 130 (see Tilghman Aff., ¶¶ 51 [a]; 64 [3]), a request that is addressed in Part B, infra.

Footnote 3:The Arbitrator denied bifurcation based largely on his inability to "predict with confidence that [Curia] will prevail" on its declaratory judgment claim, a prediction that "cannot be made on an incomplete record" (NYSCEF Doc No. 140 at 3). And the Arbitrator was concerned not just with the notice issue that is the focus of the instant motion practice, but also with the need for a "fully-developed record" upon which the regulatory/FDA issues could "be reliably decided" (id. at 4).

Footnote 4:In view of this determination, the Court need not consider Curia's argument that it is entitled to recover damages in excess of the Undertaking based upon Cyprium's alleged malice (see MOL at 10-11).

Footnote 5:More specifically, Curia offers no basis to believe that Cyprium would not have pursued an application for a preliminary injunction in aid of arbitration through non-frivolous allegations of notice similar to those ultimately presented to the Arbitrator.

Footnote 6:The Court recognizes its authority, on motion or its own initiative, to impose a monetary sanction of a non-compensatory nature upon Cyprium and its attorneys upon a finding of frivolous conduct (see 22 NYCRR 130-1.1 [b]; 130-1.2). However, Curia has moved only for compensatory sanctions, and the Court is satisfied that the substantial award of damages directed against Cyprium herein obviates the need to consider such relief sua sponte.

Footnote 7:The Court takes judicial notice of the prior proceedings and filings in this matter (see Matter of Shirley v Shirley, 101 AD3d 1391, 1394 [3d Dept 2012]; Casson v Casson, 107 AD2d 342, 344 [1st Dept 1985], appeal dismissed 65 NY2d 637 [1985]; see also CPLR 2214 [c]).